# GUTHRIE NATIONAL BANK *v.* GUTHRIE.

ERROR TO AND APPEAL FROM THE SUPREME COURT OF THE
TERRITORY OF OKLAHOMA.

No. 188.　Submitted January 18, 1899. —Decided April 8, 1899.

In ascertaining the jurisdictional amount on an appeal to this court, it is
proper to compute interest as part of the claim.

Whether a general law can be made applicable to the subject-matter, in re-
gard to which a special law is enacted by a territorial legislature, is a
matter which rests in the judgment of the legislature itself.

The statute in question in this case creates a special tribunal for hearing
and deciding upon claims against a municipal corporation, which have no
legal obligation, but which the legislature thinks have sufficient equity to
make it proper to provide for their investigation, and payment when
found proper, and it does not in any way regulate the practice in courts
of justice, and it is indisputably within the power of the territorial legis-
lature to pass it, and it does not infringe upon the Seventh Amendment
to the Constitution.

The court has the power in the absence of statutory provisions for notice
to parties, to make rules regarding it.

THE President of the United States by proclamation dated
March 23, 1889, 26 Stat. 1544, declared that the Territory of
Oklahoma would be open for settlement on April 22, 1889,
subject to the restrictions of the act, approved March 2, 1889,
c. 412, 25 Stat. 980, 1004. By that act the lands were to be
disposed of to actual settlers under the homestead laws only,
and until the lands were open for settlement under the procla-
mation of the President no person was permitted to enter upon
or occupy the same.

By the act, approved May 2, 1890, c. 182, 26 Stat. 81, Con-
gress provided a temporary government for the Territory, and
by the act, approved May 14, 1890, c. 207, 26 Stat. 109, pro-
vision was made for townsite entries.

From the opening of the Territory, under the proclamation
of the President, down to the passage of the act of May 2, 1890,
Congress failed to establish any government for it. During
that period settlers had come into the Territory and a number

of townsites had been located and settled upon by them. Many persons located and took up their residence upon the land contained in the present boundaries of the city of Guthrie. The lands were surveyed into streets, alleys, squares, blocks and lots, and what were known as provisional municipal governments were formed. By the general consent of these residents four distinct provisional municipal corporations or villages, denominated Guthrie, East Guthrie, Capitol Hill and West Guthrie, comprising some 320 acres each, were created. They were all without any law governing them, although officers were selected by the people occupying the lands, and a form of government was carried on by a kind of mutual understanding. The persons chosen as officers incurred indebtedness in administering the affairs of the municipalities, but there was no authority to raise the necessary revenues by taxation or otherwise to pay the same. These officers exercised in fact the powers usually delegated to municipal corporations. Public improvements, such as grading streets, constructing bridges, and erecting buildings were made, laws and ordinances were adopted, and offenders were punished. Schools were maintained, and the right of possession of the various claimants to town lots within their respective boundaries was regulated and certificates were issued by the local tribunals constituted by the municipal authorities for determining the rights of settlers and occupants of the various lots within the limits of the municipal governments, and the certificates thus issued were by the second section of the townsite act, above mentioned, 26 Stat. 109, to be taken as evidence of the occupancy of the holder thereof of the lot or lots therein described, except that where there was an adverse claim to the property the certificate was to be only *prima facie* evidence of the claim or occupancy of the holder.

The claims mentioned in the act of the territorial legislature hereafter spoken of arose out of these circumstances and represented the expenditures of the provisional governments for some or all of the objects above enumerated.

In December, 1890, a code of laws for the permanent government of the Territory was enacted by the territorial

legislature, and these provisional village governments, lying adjacent to one another, were incorporated under that authority into the regularly organized village of Guthrie, and on April 7, 1893, the city of Guthrie became the successor of the village of that name.

On December 25, 1890, the territorial legislature passed an act, chapter 14, of the laws of that year, for the purpose of providing a method by which to raise the necessary funds to pay the indebtedness incurred by the provisional governments of the four villages above named. The act is set forth in the margin. [1]

---

[1] Chapter 14. — CITY INDEBTEDNESS.

An Act for the purpose of providing for the allowance and payment of the indebtedness heretofore created by the people and cities of Guthrie, East Guthrie, West Guthrie and Capitol Hill, now consolidated into the village of Guthrie.

Article I. — GUTHRIE, EAST GUTHRIE, WEST GUTHRIE AND CAPITOL HILL.

SEC. 1. That the district judge of Logan County is hereby empowered to appoint three disinterested persons to act as a commission or referees to inquire into and pass upon all claims and demands of every character heretofore issued by the city governments mentioned in the caption of this act, for all purposes.

SEC. 2. That the owners and holders of any kind of scrip, warrants or other evidence of indebtedness heretofore issued by the city governments of Guthrie, East Guthrie, West Guthrie and Capitol Hill, shall present their claims to the commissioners or referees, to be appointed by the district judge, under oath, stating that the same is a *bona fide* claim, that they performed the labor or advanced the money or furnished the materials or purchased same for a valuable consideration, and that they believe the city, issuing the same, did so for necessary expenses incurred in running the city government, and said master shall hear further evidence if he deem necessary before allowing the same.

SEC. 3. The commission or referees shall keep a record of all claims filed with them for allowance and keep their office open during the hours of nine o'clock in the morning and four o'clock P.M., and shall be allowed sixty days to hear and determine all claims, or longer if the district judge so orders. Said commission or referees shall immediately after this appointment extend ten days' notice in some newspaper published in the village of Guthrie, notifying all parties holding or owning any claims mentioned in this act to present the same to them for allowance; and all persons who fail to present their claims within thirty days from date of publication mentioned in this section shall be forever precluded from so doing hereafter.

Pursuant to the provisions of that act the district judge duly appointed the commission, which proceeded to hear the cases, and on September 1, 1891, it filed in the district court of Logan County its final. report. That report contained, among other things, a reference to the various claims which were therein said to be owned by the Guthrie National Bank,. and it showed the allowance of such claims, separately and in detail, and that they were all based upon warrants which had been issued by the provisional governments. The report also showed that the city attorney of the city of Guthrie appeared at the hearing and allowance of the claims and defended for the city. The amount allowed against the city in favor of the bank was $4315.22. Other claims in favor of other parties were allowed and many were disallowed by the commission. On the coming in of this report the case was docketed as a pending case in the district court, and was continued from time to time until March 17, 1893, when the bank made a motion to approve the findings of the commission as regards the claims held by it, which motion was not then decided. On April 7, 1893, the city filed exceptions to the report of the commission. Nothing further was done until March 28, 1896, at which time the city attorney filed a motion in the.

---

Sec. 4. That after the commission or referees shall have passed upon and allowed any and all claims mentioned in this act, they shall make a report to the district court of same showing the names and amounts allowed by them and also all claims and the names of persons and amounts disallowed by them, for approval or disapproval of the district judge. And all claims allowed and approved by the district judge shall be certified to the mayor and council of the village of Guthrie, who are hereby authorized and directed to issue warrants upon the village and payable by the village to the holders and owners, payable in instalments each of the amounts to be in one, two, three, four and five years, to bear interest at the rate of six per cent per annum from the date of the allowance by the commission or referees, and said mayor and council of the village of Guthrie shall levy a tax upon the property of the residents of said village to pay the warrants herein referred to, levying same upon each subdivision heretofore constituting Guthrie, East Guthrie, West Guthrie and Capitol Hill according to the amount of indebtedness created by the city councils, the mayors and school boards, heretofore acting for and in behalf of the people resident of said cities. Each of said cities to be liable for and taxable under this act for the amount of indebtedness created by them.

district court to dismiss the proceedings by the bank and all other proceedings based upon the act of the territorial legislature creating the commission, for the reason, as stated, that the act and all proceedings under it were void. On April 2, 1896, the matter came on for hearing upon the motion of the bank to confirm the report of the commission and the motion of the city to dismiss the proceedings, and on the last-named day the court sustained the motion of the city and dismissed the proceedings upon the ground that the act under which the commission was appointed was wholly void. This decision of the court was excepted to by the bank, and thereupon it prosecuted a writ of error from the Supreme Court of the Territory to reverse such decision. On June 11, 1897, that court affirmed the decision of the district court, and rendered judgment against the bank for costs. To reverse this judgment an appeal has been taken to and a writ of error sued out from this court.

*Mr. Henry E. Asp* and *Mr. John W. Shartel* for plaintiff in error and appellant.

*Mr. John K. Richards, Mr. John L. Lott, Mr. W. J. Hughes* and *Mr. D. F. Widmer* for defendant in error and appellee.

MR. JUSTICE PECKHAM, after stating the facts, delivered the opinion of the court.

A motion is made in this case to dismiss the appeal and writ of error on the ground that the sum involved is not sufficient to give jurisdiction to this court. Act of May 2, 1890, c. 182, 26 Stat. 81, § 9. It is claimed that the amount is less than $5000, and that this fact appears from the report of the commission, which allowed but $4315.22 as the amount due from the city to the bank.

Section 4 of the act of the territorial legislature, under which the commission acted, provides that claims which are allowed and approved by the district judge are to be certified to the mayor and council of the village of Guthrie, who are directed to issue warrants upon the village for the amounts,

which bear interest at the rate of 6 per cent from the date of the allowance by the commission, and a tax is to be levied as therein provided for the payment of the warrants.

On March 28, 1896, when the city of Guthrie filed its motion in the district court to dismiss the proceeding by the bank, over four years and six months' interest had accrued upon the claim reported by the commission, and as by the terms of the act interest was to be allowed from the filing of that report up to the time of the issuing of the warrant, which could not issue until after the report had been approved by the district court, it is plain that more interest had then accrued than was necessary to bring the amount then in issue beyond the sum of $5000. It is proper to compute interest as part of the claim. *Woodward* v. *Jewell*, 140 U. S. 247. We think this is an answer to the motion to dismiss.

Other objections are made to the act by the representatives of the city which will be noticed.

It is claimed that it violates the act of Congress, approved July 30, 1886, c. 818, 24 Stat. 170, prohibiting the passage of local or special laws in the Territories. That act, among other things, provides that where a general law can be made applicable, no special law shall be enacted in any of the Territories of the United States by the territorial legislatures thereof, and it also provides that the territorial legislatures shall not pass local or special laws in any of the cases therein enumerated, among which is a law to regulate the practice in courts of justice. Both of these provisions are said to have been violated in the passage of the act in question.

Whether a general law can be made applicable to the subject-matter in regard to which a special law is enacted by a territorial legislature, is a matter which we think rests in the judgment of the legislature itself. *State ex rel.* v. *Hitchcock*, 1 Kansas, 178, 184. That body is specially prohibited from passing any local or special law in regard to certain subjects enumerated in the act. Outside and beyond that limitation is the provision above mentioned, and whether or not a general law can be made applicable to the subject is a matter which is confided to the judgment of the legislature.

Neither does the act in this case regulate the practice in courts of justice. The prohibition of the statute of Congress relates to the passing of a law by the territorial legislature, local or special in its nature, which does in effect regulate the mode of procedure in a court of justice in some particular locality or in some special case, thus altering in such locality or for such case the ordinary course of practice in the courts.

The statute here in question is of an entirely different nature. It creates a special tribunal for hearing and deciding upon claims against a municipal corporation, which have no legal obligation, and which therefore could not be enforced in a court, but which the legislature thinks have sufficient equity and are based upon a sufficiently strong moral obligation to make it proper for it to provide for their investigation and for the payment of such as are decided to be proper, by taxation upon the property situated in the city. Such an act does not in any way regulate the practice in courts of justice.

The important question in this case is whether the territorial legislature, by virtue of the grant to it of legislative powers, had authority to create this commission and to provide for the payment of claims of the nature mentioned in the act.

By section 6 of the above-mentioned act of Congress of May 2, 1890, c. 182, 24 Stat. 81, the legislative power of the Territory extends to all rightful subjects of legislation not inconsistent with the Constitution and laws of the United States. Some other limitations are mentioned, not material to be here considered. The same power is also granted to all the Territories by section 1851, Revised Statutes of the United States.

This territorial act was passed by the legislature with reference to the circumstances set forth in the statement of facts.

It was said by the Supreme Court of Oklahoma in *Guthrie* v. *The Territory*, 1 Oklahoma, 188, 194, that "These provisional governments grew out of a necessity made by the absence of legal authority. They were aggregations of people associated together for the purpose of mutual benefit and protection. Without any statute law, they became a law unto themselves and adopted the forms of law and government common among

civilized people, and enforced their authority by the power of public sentiment. They had no legal existence; they were nonentities; they could not bind themselves by contracts or bind any one else."

The services performed for and the materials furnished these provisional governments under the circumstances stated would certainly be regarded as proper and as beneficial, probably as absolutely necessary, for the well-being of the people living there. The villages which were subsequently incorporated under the law of the Territory succeeded to and enjoyed these benefits, and passed them on to their successor, the city of Guthrie, the present defendant in error and appellee. These facts give great force and strength to the moral consideration supporting claims of the nature here existing. Though they could not be enforced at law, the question is, whether the territorial legislature was unequal to the task of providing for their payment by the city which has received the benefit as above described.

This territorial act shows that only claims of a municipal character and of a *bona fide* nature could be allowed. It is also plain that the use of the words "district judge" therein does not mean to distinguish between the judge and the court. There being but one judge of that court the words are seemingly used interchangeably with the district court, and to mean the same as the latter expression.

We regard the power of the territorial legislature to pass this act as indisputable. It comes within the grant to that legislature contained in the act of Congress and in the Revised Statutes above cited.

In *United States* v. *Realty Company*, 163 U. S. 427, 439, the power of Congress to recognize a moral obligation on the part of the nation and to pay claims which, while they were not of a legal character, were nevertheless meritorious and equitable in their nature, was affirmed. The territorial legislature at least had the same authority as that possessed by Congress to recognize claims of the nature described. It is a legislative power, and it was granted to the territorial legislature by the acts already referred to. A city is a mu-

nicipal corporation and a political subdivision of the State, and what the State could do itself it has the power to direct its agent, the municipality, to do.

In *New Orleans* v. *Clark*, 95 U. S. 644, Mr. Justice Field, in delivering the opinion of the court, and speaking of municipal corporations, at page 653, said: " The books are full of cases where claims, just in themselves, but which, from some irregularity or omission in the proceedings· by which they were created, could not be enforced in the courts of law, have been thus recognized and their payment secured." And on page 654: "A city is only a political subdivision of the State, made for the· convenient administration of the government. It is an instrumentality, with powers more or less enlarged, according to the requirements of the public, and which may be increased or repealed at the will of the legislature. In directing, therefore, a particular tax by such corporation, and the appropriation of the proceeds to some special municipal purpose, the legislature only exercises a power through its subordinate agent which it could exercise directly; and it does this only in another way when it directs such a corporation to assume and pay a particular claim not legally binding for want of some formality in its creation, but for which the corporation has received an equivalent;" citing *The People* v. *Burr*, 13 California, 343; *Town of Guilford* v. *Supervisors &c.*, 13 N. Y. 143. In the latter case the legislature passed an act directing commissioners to determine and award the amount paid and expended by certain highway commissioners, and directing the board of supervisors of the county to assess the amount thus awarded upon the taxable property of the town and to cause it to· be paid in satisfaction of the claim. This was held to be a valid act, although the claim had been rejected in a suit brought to obtain its payment, and a previous legislature had passed an act directing the claim to be submitted to the electors at a town meeting, and declaring their decision should be final and conclusive, and upon such submission the claim had been rejected. It was said that the legislature of the State had power to levy a tax upon the taxable property of the town and appropriate the

same to the payment of the claim made by an individual against the town, even though the claim, to satisfy which the tax was levied, was not recoverable by action against the town; and it was held that the State could recognize claims founded in equity and justice in the larger sense of these terms or in gratitude or charity.

It is not necessary to say in this case that the legislature had the power to donate the funds of the municipality for purposes of charity alone. The facts show plain moral grounds for the act, a consideration existing in the benefits received and enjoyed by the city or by its predecessors from whom it took such benefits. The legislature might have decided the facts for itself, but instead of that it appointed this tribunal.

In *Read* v. *Plattsmouth*, 107 U. S. 568, the words of Mr. Justice Field in *New Orleans* v. *Clark*, 95 U. S. 644, were quoted with approval. In the exercise of this jurisdiction over municipal corporations by the state or by the territorial legislature, no constitutional principle is violated. It is a jurisdiction which has been customarily exercised ever since the foundation of the Government, and is based upon the power of the State as sovereign to itself recognize or to compel any of its political subdivisions to recognize those obligations which, while not cognizable in any court of law, are yet based upon considerations so thoroughly equitable and moral as to deserve and compel legislative recognition.

There is no force to the objection that in ascertaining the facts provision must be made for a trial by jury, if demanded, or else that the Seventh Amendment to the Constitution of the United States is violated, which provides that "in suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved."

This act does not infringe upon that amendment. The proceeding under it is not in the nature of a suit at common law, and the cases already cited show the power of the legislature to provide for payment by taxation of claims of the nature of those involved herein.

The cases of *Bank of Hamilton* v. *Dudley's Lessee*, 2 Pet.

492; *American Publishing Company* v. *Fisher*, 166 U. S. 464, and *Salt Lake City* v. *Tucker*, 166 U. S. 707, were cases of suits at common law, and *Thompson* v. *Utah*, 170 U. S. 343, was a criminal case. Those cases therefore do not apply here.

It is also stated that these claims were not incurred by officers of either a *de jure* or *de facto* government, and that hence there was no power in the legislature to compel the city of Guthrie to pay claims which it never agreed to pay either as a corporation *de jure* or *de facto*. But the cases above cited were cases where there was no legal obligation to pay the claims, and the acts in effect compelled their payment. The city here was under a plain moral duty to provide payment for honest and proper claims of this nature, and it seems as if it ought to be entirely ready to pay them. If any claims were without merit or fraudulent, there was opportunity to show such fact before the commission and also before the district court upon the hearing provided for by the act. The defendants in error say that there is by the act no opportunity provided for any investigation of these claims by the district court after the commission has reported the claims to that court, because the act does not give the court power to make any investigation for itself. We do not see that this is material even if true. We are of opinion, however, that the district court has such power. The statute provides in section 4 that the commission shall make a report to the district court, showing the names of the claimants and the amounts allowed by the commission, and also all the claims and the names of persons and amounts disallowed by them, and this report the statute directs shall be made " for the approval or disapproval of the district court." The report need contain nothing but what has just been stated, and it is obvious that on such a report alone the district court would be entirely without means of determining whether to approve or disapprove the decision of the commission in any particular claim. But as the report of the commission is to be made to the district court for its approval or disapproval, it follows as of necessity that the court has power to investigate for itself the facts upon which the claims were founded in order that it may intelli-

gently approve or disapprove of the decisions of the commission. It is not to be supposed that the provision in the act for making a report to the district court and for its approval or disapproval was a purely formal matter, and that the court might arbitrarily, unreasonably or improperly approve or disapprove any claim. If not, then the court must have power, in the necessary discharge of its duty to approve or disapprove, to ascertain the facts necessary to an intelligent discharge of that duty. These facts may be found by the court without a jury. As the statute does not provide for a report of the facts found by the commission upon which it based the allowance or disallowance of the claims or any of them, the court must itself find them, in order to approve or disapprove.

Although the act makes no provision for notice to the parties interested as to the time or manner in which the district court will proceed to investigate the character of the claims, yet in the absence of any such provision the court having the duty to investigate would have power to regulate the time of the hearing and provide for reasonable notice by its rules, so as to prevent surprise. This, in substance, was held in *United States* v. *Ritchie*, 17 How. 525, 533, where a similar lack of provision for notice in a certain section of the act was referred to and the power of the court to make rules in regard to it was asserted.

Whether the act is to be construed as making the decision of the district court upon the merits of any claim final, it is not now necessary to decide. The district court has refused to exercise any jurisdiction under the act, because it decided the act was invalid. Upon such a judgment we think a writ of error was properly sued out from the territorial Supreme Court under the ninth section of the act, c. 182, 26 Stat. 85, and under the same section a writ of error from this court to the latter court may properly issue.

The other questions set forth in the brief of counsel for the defendant in error, relating to parties and matters of procedure, we have examined, and regard them as without merit.

We are of opinion that the district court erred in dismissing these proceedings on the ground of the invalidity of the

act under which they were taken, and that the Supreme Court of the Territory erred in affirming that judgment of dismissal, and

> *We therefore reverse the judgment of the latter court and remand the case with directions to that court to reverse the judgment of the district court, with directions to the district court to proceed to a hearing of the claims upon their merits.*

MR. JUSTICE HARLAN dissented.