## NEW YORK LIFE INS. CO. v. BOARD OF COM'RS OF CUYAHOGA COUNTY, OHIO.

### (Circuit Court of Appeals, Sixth Circuit. January 8, 1901.)

### No. 826.

1. STATUTES—RETROACTIVE EFFECT—REQUIRING COUNTY TO FULFILL MORAL OBLIGATION.

 The provision of the Ohio constitution (article 2, § 28) prohibiting retroactive legislation does not, under the decisions of the supreme court of the state, deprive the legislature of power to recognize the equitable and moral obligation of a county arising out of a past transaction, and to require the levy of taxes to satisfy such obligation, although it was one not legally binding on the county. Conceding the power of the legislature in any case to recognize a claim against the state, or a political subdivision thereof, which rests upon a moral consideration only, and to provide for its payment, such power must necessarily be exercised with reference to a past transaction, since the legislature could not otherwise determine the existence of a moral consideration such as would warrant its action.

2. SAME—PROVINCE OF COURTS—REVIEW OF QUESTIONS DETERMINED BY LEGISLATURE.

 Under the decisions of the supreme court of Ohio, it is not the province of the courts to review the determination of the legislature that in equity and morals it is the duty of a county to recognize and pay a claim against it which is not legally enforceable, unless the facts assumed by the legislature and on which it acted are disputed.

3. SAME.

 Under authority given by an act of the legislature of Ohio, a county issued and sold bonds at par and accrued interest for the purpose of purchasing a site and building an armory for the use of the state national guard. After it had purchased the site and practically completed the building, expending for the purpose nearly all the proceeds of the bonds, and after it had paid two installments of interest thereon, the supreme court of the state decided, in a suit by a taxpayer, that the act authorizing

the issuance of the bonds was in violation of the constitution, as authorizing the imposition of a local tax for a general state purpose, and that the bonds were void. In 1898 the legislature passed an act (Rev. St. Ohio, § 2834c) which in effect required any county having issued and sold bonds under the circumstances of this particular case to recognize and fulfill the equitable and moral obligation created thereby to reimburse the holders of such bonds to the amount of the principal and interest thereof, and, in case of its refusal to do so, gave the holders of the equitable claim a right of action thereon, further providing that the county might devote the building to any county purpose. *Held*, that such act was not retroactive in a constitutional sense, as applied to the county in question, nor in violation of the provision against local taxation for general state purposes, but was valid; it being within the province of the legislature to determine, as between the state and county, upon which the moral obligation rested to discharge the debt and take the property, and the facts upon which it acted being undisputed.

4. SAME.

A purchaser of the said bonds in open market, before any question as to their invalidity had been raised, was not guilty of such negligence or chargeable with such constructive notice of their invalidity as to deprive him of the right, in equity and morals, to payment from the county; it being conceded that both the county and the purchasers acted in entire good faith, and in the belief that the statute was valid.

5. MUNICIPAL CORPORATIONS—VALIDATING TITLE OF COUNTY TO PROPERTY.

The county having taken title to the property, the recognition of its ownership by the act of the legislature validated its acquisition, although the county may have been without legal capacity to acquire and hold it for the purpose originally intended; the state alone being competent to raise such objection.

6. CONSTITUTIONAL LAW—IMPAIRING OBLIGATION OF CONTRACTS—VALIDITY OF LEGISLATION.

The provision of the federal constitution against state legislation impairing the obligation of contracts applies only to contracts which are legally valid, and an act requiring a county to recognize and fulfill an equitable and moral obligation by paying a claim not legally enforceable against it is not in violation of such provision.

In Error to the Circuit Court of the United States for the Northern District of Ohio.

This suit was brought to recover an amount equal to the sum of the amounts specified in certain negotiable bonds issued by the county of Cuyahoga, Ohio, for the purpose of purchasing a site and building an armory thereon in the city of Cleveland. The case was disposed of in the circuit court upon a demurrer to the petition. The facts, as alleged in the petition and admitted by the demurrer, are these: On the 27th of April, 1893, the legislature of Ohio passed an act entitled "An act to authorize the commissioners of any county, containing a city of the first class, second grade, to borrow money and issue bonds therefor, for the purpose of building and furnishing a central armory in any such city for the use of the Ohio National Guard, and procure a site therefor." It is unnecessary to recite the act at length, as it is not questioned that in form and language, at least, it was sufficient to authorize the issue of the bonds above mentioned, and bind the county for the payment thereof. The county of Cuyahoga, which was the only one in the state answering to the description of counties authorized by the act, by a resolution of its board of commissioners adopted May 13, 1893, determined to issue its bonds in the sum of $225,000 for the purpose of procuring a site and building an armory. Bonds to that amount in the denomination of $1,000 each, bearing date July 1, 1893, with coupons attached for interest at 5 per cent. per annum, payable semiannually, were issued and sold for their full value at par some time in September of the same year. One hundred and forty-five of these bonds were subsequently purchased in the open market at a premium by the plaintiff, in good faith, and without notice of any infirmity therein other than such as

might be imputed to the purchaser by law. Interest falling due on the 1st days of January and July in the years 1894 and 1895, respectively, was duly paid. With the proceeds of the bonds a site in the city of Cleveland was purchased, the title being taken in the name of the county, and an armory was built, which was nearly completed at the time this suit was commenced. The county has been in the possession and occupancy of the site since it was acquired, and of the building during its erection, exercising the rights of ownership and control. Of the sum borrowed, there remains in the treasury of the county, unexpended, $17,755.30. After the money had been borrowed, the site acquired, and the building substantially completed, a taxpayer of the county instituted legal proceedings in a court of the state of Ohio, against the county authorities, to restrain the further levy of taxes to pay the bonds, upon the ground that the law which was supposed to authorize them was in conflict with the constitution of the state, and therefore invalid. Such proceedings were had that upon the final determination thereof by the supreme court of the state the statute was held to be unconstitutional, and a decree was rendered in favor of the plaintiff in that suit, that the county authorities be restrained as prayed. Hubbard v. Fitzsimmons, 57 Ohio St. 436, 49 N. E. 477. Thereupon the legislature of the state, on the 21st of April, 1898, passed the following act, now section 2834c of the Revised Statutes of Ohio: "Whenever the commissioners of any county, acting in accordance with the act of the legislature, have incurred obligations or have issued and sold bonds, and with the proceeds of such obligations or bonds have constructed an improvement or purchased land, and have wholly or partially completed a building thereon, and, after such proceeds have been so expended, and the county thereby placed in the ownership and possession of such improvement or building, the statute under which such bonds were issued or obligations incurred has been, by the supreme court, declared unconstitutional, and the county authorities enjoined from levying taxes to pay the interest and principal of such bonds or obligations, whereby the county has, with the proceeds of the bonds which it still retains, acquired such improvements or building, and, by reason of the unconstitutionality of the law under which it has acted, can not pay its obligations outstanding in the form in which they were issued, such commissioners may, if they deem it for the best interest of the county so to do, fulfill the equitable and moral obligations of the county to reimburse the holders of said bonds or obligations to an amount equal to the principal and interest which has accrued thereon, and for the purpose of so doing may issue and sell bonds of such county, or borrow money in such amount and for such lengths of time and at such rate of interest as the commissioners may deem proper, not exceeding the rate of 5 per centum per annum, payable semi-annually, to be used in the reimbursement and payment of such equitable and moral claims and liabilities against such county: provided, that no such payment or reimbursement of any such moral or equitable claim shall be made of any claim that has remained due or unpaid for a longer period than ten years: provided, further, that should the county commissioners of any county, upon the written request of the holder of any such equitable claim against the county, as in this section described, fail, within six months after such demand, to make provision for such claim under the provisions of this section, then, in such case, the holder of any such legal or equitable claim, as in this section described, against such county, shall have a right of action in any court of competent jurisdiction to recover the amount of such claim and interest against such county at any time within a period of ten years from the time the cause of action accrues: provided, further, that the county commissioners may devote the building or improvement, which the county has acquired in the circumstances mentioned in this act, to any county purpose." On the 27th of February, 1899, the plaintiff made a demand upon the county board to reimburse it according to the authorization of the act, by paying or providing for the payment of the bonds held by the plaintiff. This the board refused, and the plaintiff was notified by the board that no proceedings for the reimbursement of the plaintiff would be taken. Six months after this refusal having elapsed, this suit was brought. To a petition alleging substantially these facts the defendant demurred, the grounds assigned being as follows: "(1) Said petition does not contain facts sufficient to constitute a cause of action against the defendant. (2) Because

the enactment of the statute (section 2834c of the Revised Statutes of Ohio) under favor of which said action has been brought is not authorized, but is prohibited, by the constitution of the state of Ohio, especially by section 28 of article 2, which prohibits the enactment of retroactive laws, and by section 2 of article 12, which requires that taxes which are to be devoted to general purposes must be levied upon all the taxable property within the state. (3) Because the enactment of the statute (section 2834c of the Revised Statutes of Ohio) is in violation of section 10 of article 1 of the constitution of the United States, which prohibits a state from passing any law impairing the obligations of contracts, and is also in violation of section 1 of article 14 of the constitution of the United States, which prohibits any state from depriving any person of property without due process of law, or denying to any person equal protection of the laws." Upon the hearing of the demurrer it was sustained by the court, the judge presiding being of opinion that the act of April 21, 1898, was in conflict with the constitution of Ohio, and the petition was thereupon dismissed. 99 Fed. 846. The plaintiff brings the case here upon a writ of error.

Henry A. Garfield, for plaintiff in error.

P. H. Kaiser, for defendant in error.

Before HARLAN, Circuit Justice, SEVERENS, Circuit Judge, and THOMPSON, District Judge.

SEVERENS, Circuit Judge, having stated the case as above, delivered the opinion of the court.

The grounds upon which the learned judge sustained the demurrer to the plaintiff's petition, as indicated by his opinion sent up with the transcript, were two: First, that the act of April 21, 1898, was in conflict with the provision contained in section 28 of article 2 of the constitution of the state, which prohibits the enactment of retroactive laws; and, second, that it was in conflict with section 2 of article 12 thereof, which provides that taxes which are to be devoted to general purposes shall be levied upon all the taxable property within the state. And these are the principal grounds relied upon by the defendant in error to sustain the judgment.

The conclusion that the act was retroactive is based upon the theory that, there having been no vested right at the time it was passed to recover the money loaned, the legislature created a liability upon a transaction which had been already closed, and in which no liability had been incurred by the county. But this, we think, is a misconception of the purpose of the act, as well as of the nature of the facts upon which it proceeded. It was not intended to declare that the past transaction created a contract or imposed any legal liability, but that a moral obligation had arisen, which it was then incumbent upon the legislature to provide the means to discharge by the exercise of its power of taxation. The power of the legislature to raise taxes to meet obligations, whether legal or moral only, is not restricted to such obligations as shall be thereafter incurred. It is not questioned that the legislature of Ohio has, in some circumstances, at least, the power to recognize and provide for the discharge of obligations binding only in conscience and honor. This has always been admitted by the highest court of the state. In the nature of things, the moving facts must have already occurred. Otherwise, there could be no recognition or any estimate of the par-

ticular merits of the claim, or the measure of relief which justice would require. A statute of this kind, enacted for the purpose of providing for future transactions, would be an anomaly. To deny the power of recognition of a moral obligation because it rests upon past transactions is to deny it altogether. That such a statute is not obnoxious to the prohibition of retroactive laws by the constitution of Ohio has been so many times held by the supreme court of the state, sometimes by necessary implication, and sometimes in express terms, that we can have no doubt of its being the settled rule in the state.

In the case of State v. Harris, 17 Ohio St. 608, it appears that volunteers had enlisted to fill up the quota of certain counties in the state in response to calls made by the president in 1862. At the time of their enlistment they were promised bounties by the county commissioners and military committees or recruiting officers appointed by the governor. In 1866 the legislature passed an act requiring the board of commissioners in each of such counties to levy a tax to pay the bounties. Upon a refusal of the board to levy the tax, a writ of mandamus was awarded by the supreme court, requiring the board to show cause why it did not make the levy. Among the reasons set up in response was this: that the act of 1866 was retroactive and unconstitutional; and this defense was pressed upon the court by the counsel for the board, relying upon section 28 of article 2, above mentioned. But the unanimous opinion of the court was that the act in question was not void as being repugnant to that provision of the constitution; that its validity did not depend upon the existence of power in the legislature to create a contract; that it impaired no vested right or the validity of any contract, but that the authority was "found in the general grant of legislative power, which includes taxation in all its forms, both local and general, unless restricted by other parts of the constitution." It is to be observed that there was no obligation on the part of the counties; the promises of bounty having been devoid of any authority whatever derived from the then existing law, which contained no provision for such bounties. A similar question came before the court in State v. Trustees of Richland Tp., 20 Ohio, 362, and State v. City of Circleville, Id., depending upon other acts of the legislature, passed in 1866 and 1867, requiring the levy of taxes to pay bounties to veteran volunteers. But in these cases there had been no promise of a bounty, differing in this respect from the facts in the former case. The same objection to the acts (that they were repugnant to the prohibition of section 28 of article 2 of the constitution) was again urged. The objection was overruled, and the doctrine of the former decision reaffirmed; the court stating more fully the grounds upon which it was held that such laws did not depend upon the validity of any contract, but rested upon the power of the legislature to levy taxes for the purpose of meeting those obligations, which justice and a sense of public duty required should be recognized. And it was distinctly declared that such a law cannot be regarded as retroactive.

In the case of Board v. McLandsborough, 36 Ohio St. 227, one Mc-Elveen had been, without fault on his part, robbed of certain funds held by him as treasurer of a school district. It had been held in State v. Harper, 6 Ohio St. 607, that such felonious taking did not discharge the treasurer and his sureties, and could not be set up as a defense to an action on his official bond. But the legislature had passed an act for the exoneration of McElveen, reciting that the loss had occurred without his fault, and directing the school board to levy a tax to meet the deficiency created by the treasurer's loss. The school board proposed to hold McElveen's successor responsible for the moneys stolen, upon the ground that in presumption of law he had received the equivalent of such moneys from his predecessor. The successor thereupon applied for an injunction, and eventually the case went to the supreme court, where it was held that, notwithstanding McElveen would have had no defense but for the act of the legislature exonerating him, yet, as that body was vested with the taxing power of the state, and with the authority to recognize the obligations of justice in the exercise of that power, it was competent to grant the relief, and this although the result would be that the taxpayers of the district must ultimately bear the loss. With respect to the constitutional limits of the power of taxation, the court say:

"They must be found in the constitution itself. Without undertaking to enumerate or define those limitations, we are clear that the act in question in this case does not fall within any of them."

In this case it does not positively appear that the objection that the act was retroactive was urged. Still, from the general statement of the court, it is fairly to be presumed that the court did not fail to take it into consideration.

In the case of State v. Board of Education, 38 Ohio St. 3, which was somewhat similar to the one last considered, this objection to an exonerating statute that it was retroactive was made by counsel, and the court answered that it was not well taken. And the court say:

"The only question before us is as to legislative power, and, that being resolved in favor of its existence, the responsibility as well as the power with respect to such legislation must rest with the general assembly."

These cases have been thus fully stated in order to show that the proposition that such laws as that here questioned are not repugnant to the constitutional prohibition against retroactive laws, has been repeatedly adjudged by the supreme court of Ohio. We are referred to no case decided by that court which holds the contrary. In the case of Commissioners v. Rosche, 50 Ohio St. 113, 33 N. E. 408, 19 L. R. A. 584, which was much relied upon by the court below, the learned judge who delivered the opinion of the court admitted the power of the legislature, notwithstanding the restrictions of the constitution, to enact laws for the purpose of fulfilling moral obligations; and the admission is not qualified by any such impossible suggestion as that the legislature could not base its legislation upon conditions which had resulted from past transactions, and

the cases cited by him from the former decisions of the court, apparently with approval, were all cases where the conditions were such as just stated.

The reasoning upon which the court below reached the conclusion that this statute was retroactive, within the meaning of the constitution of Ohio, is based upon the idea that it created a new right, and vested the holders of the bonds with a cause of action which had no previous existence. But this, as we have seen, is not the holding of the supreme court of Ohio, which disclaims any such ground for supporting the recognition of a claim, and founds it upon the public duty which the legislature is required to discharge without regard to the question whether the claim is cognizable by a court of justice or not. And this holding is undoubtedly in accord with the doctrine which generally, if not universally, prevails. The cases are quite numerous. But we shall refer only to a few which are authoritative, in the absence of any controlling peculiarity in the state jurisprudence.

In City of New Orleans v. Clark, 95 U. S. 644, 24 L. Ed. 521, the city had issued its bonds and loaned them in aid of a gas company. The bonds had been sold, and with the proceeds works of the company had been built in the city. But there was a provision in the laws of Louisiana that the city should not have power to contract any pecuniary liability without providing the means of paying it. This had not been done. But some time afterwards the legislature passed an act requiring the city to pay the bonds. In an action to enforce them the city relied upon a prohibition in the constitution of Louisiana against the passage of retroactive laws, which, it was claimed, rendered the statute charging the city with the bonds invalid. But it was held that such legislation was not forbidden by the constitution:

"A law requiring a municipal corporation to pay a demand which is without legal obligation, but which is equitable and just in itself, being founded upon a valuable consideration received by the corporation, is not a retroactive law, —no more so than an appropriation act providing for the payment of a preexisting claim. The constitutional inhibition does not apply to legislation recognizing or affirming the binding obligation of the state, or of any of its subordinate agencies, with respect to past transactions. It is designed to prevent retrospective legislation injuriously affecting individuals, and thus protect vested rights from invasion."

In Read v. City of Plattsmouth, 107 U. S. 568, 2 Sup. Ct. 208, 27 L. Ed. 414, the city had issued its bonds for the purpose of erecting a high-school building. The bonds were sold, and with the proceeds the city constructed the building, and was in possession of it. The bonds were issued without statutory authority. But later on the legislature passed laws validating the bonds, and requiring the levy of taxes to pay them. In an action to enforce them, it was objected that the act then in question was legally equivalent to an act conferring upon the city power to issue bonds, and, being a special act, was therefore unconstitutional. But the court held that the act was not an act creating a new corporate power in the county, within the meaning of the provision of the constitution, which latter referred to grants of authority to be exercised by the municipality

itself in the future, and not to an authority directly exercised by the state, and said that:

"What the state might properly have done by direct action, it may do through the public action of a municipal body, such as the city of Plattsmouth, which, in the performance of the duty assigned, does not so much exercise a corporate power of its own as discharge a function of the state."

In the case of U. S. v. Realty Co., 163 U. S. 427, 16 Sup. Ct. 1120, 41 L. Ed. 215, congress had passed an act for the payment of a bounty to the producers of sugar, in reliance upon which many persons had incurred expense in preparations for the business. The constitutionality of the act was doubtful, and congress afterwards repealed it. This entailed serious financial loss upon those who had engaged in the business upon the expectation of the bounty. Thereupon congress, in recognition of the moral obligation arising upon such circumstances, passed an act providing indemnity for their loss; and this indemnity was commensurate with the bounty previously promised. The validity of this legislation being questioned by the officers in the treasury department, suits were brought under the last-mentioned act to obtain payment of the compensation therein provided for. The supreme court of the United States, upon a full and comprehensive examination of the whole subject, in an opinion by Mr. Justice Peckham, held that the later act was valid; and this independently of the question whether the original act promising the bounty was so or not. The substantial ground of the decision was that, whatever the legal obligation or the legal right to expect the bounty might have been, the circumstances which had resulted were such as to create a moral obligation of the government, which it was within the constitutional power of congress to recognize and satisfy. It resulted from the conclusion, also, that the statute was not retroactive; that is to say, it was not given the force of law from any previous date.

A like decision was made in Guthrie Nat. Bank v. City of Guthrie, 173 U. S. 528, 19 Sup. Ct. 513, 43 L. Ed. 796, where the territorial legislature of Oklahoma had passed an act requiring the city of Guthrie to pay certain claims which had been created by organizations in the constituent precincts of the city, effected for the purpose of maintaining justice and order before any law for the government of the territory had been passed by congress. There had never been the semblance of a legal claim, but, the city having been organized by uniting the several localities after a system of law had been provided for, the territory was held to be subject to a moral obligation sufficient to support the action of the legislature in clothing it with the attributes of a legal obligation. Manifestly, the law was held to be operative only from the date of its passage, and gave the claims no efficacy from any preceding date. We shall have occasion to consider this subject further in discussing another ground of defense which was sustained in the circuit court.

The court below, however, although of opinion that this was a retroactive statute, nevertheless held that the legislature had the power to pass an act of this description in the exercise of its power of taxation, provided the claim which it recognized and established

should be such that "the natural justice of the object sought to be accomplished should be indisputable," employing the language of the learned judge who delivered the opinion of the court in the case of Commissioners v. Rosche, 50 Ohio St. 113, 33 N. E. 408, 19 L. R. A. 584, and which utterance the court below seems to have regarded as binding upon it.   But we think undue weight was given to that expression.   No such doctrine is found in the syllabus, which in Ohio represents the determinations of the court.   It was not necessary to the decision by the court of the case or questions before it, nor was it in accord with the repeated decisions of that court which had never been overruled.   It was not reconcilable with the doctrine generally accepted elsewhere.   The case was one where certain parties brought suit to recover an amount of taxes which they had several years before paid under a misunderstanding of the law. They had listed certain property of their own for taxation, and returned the list to the officer having charge of the assessment.   Afterwards they voluntarily paid the taxes assessed thereon, without a protest or any indication that they had a thought of the taxes ever being refunded, or of making any claim therefor.   Some years afterwards the legislature passed an act requiring the county to refund the whole of the taxes, a limited part of which were for county purposes. · The county board declining to comply with the act, Rosche Bros. instituted legal proceedings to enforce payment.   The supreme court held they were not entitled to recover.   There was nothing on the face of the law which indicated that the legislature had enacted it for the purpose of meeting a moral obligation, and, as the court held, there was no moral obligation in fact.   It was therefore unnecessary to say that the natural justice of the object sought to be accomplished must be indisputable in order to justify the act. The learned judge cites cases to show that the supreme court of Ohio has always held that a tax voluntarily paid could not be recovered.   Mays v. City of Cincinnati, 1 Ohio St. 268; City of Marietta v. Slocomb, 6 Ohio St. 471; Wilson v. Pelton, 40 Ohio St. 306; Whitbeck v. Minch, 48 Ohio St. 210, 31 N. E. 743.   Proceeding from these grounds, the learned judge concluded that inasmuch as there was no moral obligation, and the statute there in question imposed an obligation upon the county which did not attach when the transaction occurred, the legislature transcended its powers.   The statement that the moral obligation must be indisputable does not appear to have received the indorsement of the court.   The syllabus does not announce any such doctrine, but rests the decision upon the grounds that the statute was retroactive, and that the purpose was general, and not local.   In the later case of Board of Education of Marion Tp. v. State, 51 Ohio St. 531, 38 N. E. 614, the same learned judge went more fully into the discussion of the subject, and the conclusions there reached were, as stated in the syllabus, that:

"(1) Where no obligation, legal or moral, rests upon a board of education to pay a claim asserted against it by a private individual, an act of the general assembly, procured by the claimant, commanding such board to levy a tax for its payment, is unconstitutional and void.   (2) In such case, if the board of education disputes the facts asserted by the claimant as the foundation of his

claim, the general assembly, while it may make inquiry to ascertain in the first instance the truth of the facts so asserted, yet is without authority to conclusively find, and recite in the act providing relief, the facts in dispute so as to estop the board of education from contesting them in a court of justice where the act is sought to be enforced."

The facts upon which the case was decided were shown by the petition and answer, to which there was a demurrer, to be as follows: The relator had presented to the legislature a claim arising upon a warrant issued by the township clerk, by order of the board, upon him as treasurer, for a certain sum of money, which he had paid, but for which, as he alleged, he had not been allowed in his settlement or otherwise. The legislature passed an act reciting that he had paid this sum to his successor by mistake, and ordering the board to levy a tax for refunding it. But the answer to his petition for a mandamus showed that the claim represented by the warrant had in fact been paid by the relator on other warrants, and that he had been allowed therefor in settlement, and, further, that the warrant in question was subsequently issued by the clerk by mistake; that it was never delivered by the clerk to the payee, but in some unknown way got into the hands of the relator. Upon this showing the court adjudged that the act of the legislature was void, the refunding being a mere gratuity. In the opinion the learned judge, after speaking of certain established rules, says:

"That the legislative branch of the government is necessarily clothed with a broad discretion in determining the character, whether public or private, of the purpose for which funds may be raised by taxation, is equally settled. * * * In doubtful cases the courts should not interfere with the exercise of this legislative discretion, and in all cases the legislative determination is entitled to great respect. * * * That the power, however, is not unlimited, is, we think, established by the great weight of authority, as well as reason. * * * No good reason can be assigned for vesting it with power to take portions, large or small, of the property of one or a number of persons, and granting it as a benevolence to another. Where a legislature attempts this, directly or indirectly, it passes beyond the bounds of its authority, and parties injured may appeal to the courts for protection. * * * It may be conceded that the general assembly may authorize one of the political subdivisions of the state to levy a tax to pay a demand not legally enforceable, but founded on a moral consideration, or may even command that the levy shall be made for that purpose, and yet deny to it the power to determine conclusively the existence of such obligation. * * * We do not deny the power of the general assembly to inquire into the merits of any claim sought to be asserted through its agency before granting relief to the claimant by legislative action. Not only has it such authority, but its exercise should be carefully and rigidly observed. * * * Where, however, the facts out of which a moral or legal obligation is claimed to arise are disputed, the contention falls within the province of the courts."

We think these last two cases do not sanction the conclusion that the court may sit in review of the legislative discretion, and itself determine the measure or degree of merit which a claim must have to entitle it to favorable consideration at the hands of the legislature. But they do decide that, if the facts upon which the legislature has acted are denied, the court may inquire whether they did in truth exist, and if it clearly appears that the purpose of the act was a private one, and so beyond the pale of legislation, the court will not regard itself as concluded, but will adjudge the act void.

These decisions do not overrule or criticise the previous cases, but cite them with apparent approval. The contrary doctrine would, as it seems to us, involve a complete subversion of the legislative and judicial departments. The power to determine the fitness of measures to promote the interests or discharge the duties of the public, and of each political division thereof, is inherent in the sovereignty of every state having an organized government. Necessarily coincident with this power is the power to raise money by taxation levied upon the whole body politic, or some subordinate organization thereof, as may be deemed just and proper, for the purpose of accomplishing the intended object. These propositions are fundamental in our republican forms of government, in common with other forms of civil organization existing for the purpose of executing the powers and duties of a state, and are familiar to every one. By the constitution of Ohio these powers of the state are expressly devolved upon the legislature. It cannot discharge this trust without authority to determine, as the representative of the state, for what public objects and upon what political divisions taxes should be levied. The constitution may impose restrictions; but, unless it has done so, the power of the legislature is untrammeled, and the judicial department has no authority to interfere. It may be conceded that if the legislature, departing from its functions, should, under the guise of legislation, devote public funds to be collected by taxation for an object in no sense public, the judiciary has authority to interfere and declare such action to be outside of the legislative power, and therefore void, as amounting to a confiscation. But the rule in such cases is that the violation of the restrictions must be clear and indubitable before such interference is authorized. The only restrictions relied upon in the present case are those which prohibit retroactive laws, and that which, in effect, prohibits the levy of taxes for a general purpose upon a political division of the state. We have shown, as we think, that the law in question is not retroactive, and that the purpose, which is to require the county of Cuyahoga to discharge the moral obligation resting upon it, relates to a subject which is local in its nature. If the legislature has power to recognize a moral obligation of the state, it has power to recognize a moral obligation of a county. Confessedly, there is no other depository of such power. The legislature judges for it what moral obligations it should satisfy. It is its representative for that purpose; and, having determined the obligation to exist, it is manifest that the levy to satisfy it must be made upon the county, and, further, that the purpose is a local one. State v. Hoffman, 35 Ohio St. 435, 444. Beyond question, the legislature may compel a county to pay a legal obligation. Upon the same authority, it may compel it to pay one which it is bound only in good conscience and honor to pay. It is inadmissible to revert to the proposition that the claim was originally invalid in point of law. That has become immaterial.

The doctrine of the supreme court of Ohio upon this subject, as we construe its decisions, is not materially different from that which prevails in the courts of the United States, as declared in the cases

decided by the supreme court, which are cited in another related branch of the subject. City of New Orleans v. Clark, Read v. City of Plattsmouth, U. S. v. Realty Co., and Guthrie Nat. Bank v. City of Guthrie, supra. Indeed, it has never been held by that court that the power of the legislature in matters of this kind is so absolute that it can transfer, under the taxing power, one man's property to another for merely private purposes. And it is consistent with the decisions we have referred to that the courts should have power to arrest an arbitrary edict which is not within the province of legislation. The supreme court of Ohio, in substance, holds that, where the facts which have been assumed by the legislature to constitute a public purpose are disputed, the court may investigate the subject, so far forth as to ascertain whether the facts were so, giving to the legislative finding the due presumption of its correctness. Counsel for plaintiff in error have urged that the question we are here considering is substantially whether the power to sanction and give effect to such claims is legislative or judicial in its character, and that as there is nothing peculiar in the distribution of such powers in the constitution of Ohio, which affects that question, it is one of general jurisprudence, with respect to which we are not bound by the decisions of the supreme court of Ohio. But, as we find that there is no material difference between the doctrine of the Ohio court and that which is maintained by the federal courts, it is not necessary to consider whether the question is such that the decisions of the former are obligatory, in the strict sense of that term. But here there is no dispute about the facts on which the legislature acted. They were as fully understood then as now. And it is impossible to say that there was no meritorious quality in this claim, which the legislature might recognize and hold to be sufficient to require indemnity. On the contrary, we think the equitable features of the case were such as to appeal quite strongly to the sense of justice of the legislature. The good faith of the parties engaged in borrowing and lending the money is conceded. Both parties supposed the law to be valid, and intended to make a valid contract. The then existing circumstances contained no warning which would deter an ordinarily prudent man from taking the bonds. The purchaser was charged with notice of the statute, and also of such constitutional provisions as the statute involved. For certain necessary purposes a presumption of law imputes to parties a knowledge of the right construction of the constitution and statutes. But that imputation is very often contrary to the fact, and, like other such presumptions, should only be employed for the purposes for which it is raised. The question here is one of morals, and regards the motives and expectations of the parties as they really existed.

Counsel for the county urge that the party taking these bonds ought to have known that the statute under which they were issued was forbidden by the constitution of the state, and therefore void. But it seems to us that there is no sufficient ground on which negligence in making a right determination of the validity of the law can be charged upon the purchaser. What were the existing conditions? The legislature of Ohio had some years before provided for the organ-

ization of a military force called the "Ohio National Guard," and had directed that the companies and troops should "be allotted and apportioned in such localities of the state as the necessities of the service in the discretion of the commander-in-chief might require." Section 3033, Rev. St. Ohio. The purpose was to provide a force to aid the civil authorities in quieting riots, mobs, and turbulent assemblages, in maintaining public order and enforcing the law. By section 3096 the mayor of any municipal corporation was authorized to call out the guard in case of tumult, riots, etc. It is well known that the large cities are the places where turbulence and disorder are most likely to occur, and where the necessity for prompt military assistance is most urgent. The city of Cleveland, in Cuyahoga county, is one of the largest in the state. By an act passed March 3, 1893, by the same legislature, and just before the passage of the act in question, the citizens of Cleveland were authorized to organize an independent company of infantry, which should be subject to the call of the mayor or governor in case of insurrection or riot. Volume 90, p. 66, Ohio Laws. By other provisions of the statutes the military organizations were required to meet for drill each week in armories to be provided by the adjutant general and other officers, where, also, the arms and equipments of the several organizations were to be stored. Such general provision was made; but it has been held by the supreme court that, although there is general provision made by law for a general purpose, that does not forbid local legislation relating to the same subject, where the matter is of peculiarly local concern also. State v. Shearer, 46 Ohio St. 275, 20 N. E. 335. Then there was the strong presumption resting on the general principle in favor of the validity of the law. The supreme court of the state had already held that statutes which one might reasonably think were quite as much open to the objection that they provided a local tax for a general purpose as that under which these bonds were issued were valid. See State v. Harris, 17 Ohio St. 608; State v. City of Circleville, 20 Ohio St. 362; Warder v. Commissioners, 38 Ohio St. 639. And he might well suppose that the validity of the bonds would be determined by the law as it then stood. We are not to be understood as expressing any view of our own upon the subject of the validity of the statute under which the bonds were issued. We are not required to do so for the purposes of the case as it is presented to us. We are referring to the existing circumstances, and the legal presumption in favor of the validity of the statute, as well as the prior decisions on similar subjects, to show that a man of business could not be charged with negligence in not anticipating that the statute would be held to be unconstitutional.

We are referred to the cases of Wasson v. Commissioners, 49 Ohio St. 622, 32 N. E. 472, 17 L. R. A. 795, and Long v. Brinkman, 7 Ohio Cir. Ct. R. 165, as decisions made before the bonds were issued, and, as it is supposed, affecting the validity of the bonds. It is claimed the purchaser should have taken notice of them. The case first mentioned was one where the county of Wayne had been authorized to issue bonds to pay money to be borrowed in order to make a donation to secure the location in that county of the Ohio Agricultural

Experiment Station. The board of control was to receive the donation and purchase the site. The title to all the lands purchased was to be vested in the state. It was held that the law, being one to impose taxes on the county for a general purpose, was unconstitutional. In that case the purpose was one which affected the whole state, and did not, except merely incidentally, benefit the county of Wayne more than any other, and the property became that of the state. On those grounds it was readily distinguishable from preceding cases. It would be utterly unreasonable to say that the purchaser was at fault in not regarding that decision as indicating the invalidity of the statute under which the bonds he was purchasing were issued. The other case, although it had a direct bearing on the validity of the statute, was not a decision of the supreme court of the state, and was not published until after the bonds had been sold.

Recurring to the circumstances of the present case, the county received the full par value of the bonds, purchased the site, and erected the building, continuing to recognize its obligation upon the bonds by paying interest, and now holds the title to, and is in possession of, the property acquired by the borrowed money. No taxpayer of the county appears to have raised any objection until after the transaction had been substantially accomplished. There was no other fault that could be attributed to either party than that of having made a mistake in respect to the legal authority of the county. The circuit judge was impressed by the equities of the case, and indicated his sense of justice in the state's assumption of the obligation. Doubtless this might have been done. But the legislature, in doing this, would have been in the exercise of a power which included the power to determine whether, upon its view of the fitness and justice of the case, the burden should be cast upon the state or upon the county. It might think that as the county, not acting under compulsion, had, upon consideration of the local advantages which would accrue to it from having an armory for the National Guard in its midst, determined to build one and pledge its own faith for the necessary funds, and had taken no step to recant until after it had spent the lender's money, it would not be inequitable that it should take the burden as its own obligation. In point of fact, however the matter might stand in theory, the substantial benefits of the building of an armory in that locality were enjoyed most largely by the local public, and in a much less degree by the people of the state at large. This may be regarded as a broad view of the matter, but it is upon such views that the legislative discretion is exercised. The claim having been established as a moral obligation of the county, it was erroneous to hold that the act which required the county to pay it was in violation of the provision of the constitution which ordains that taxes for general purposes must be levied upon all the taxable property of the state.

It remains to notice some incidental suggestions bearing upon the principal questions advanced by counsel for the defendant in error. Our attention is called to section 28 of article 11, whereby certain curative powers are conferred upon the legislature, relating to "omissions, defects and errors in instruments and proceedings." But, as

it is not claimed that the legislature exercised its power under that grant, the suggestion becomes irrelevant and need not be pursued.

In connection with the subject of the disposition of the money borrowed and the acquisition of the armory, it is urged that the county did not have the legal capacity to take and hold property acquired for such a purpose. But the act in question, if otherwise valid, recognizes the acquisition of the property by the county as vesting the ownership in it, and further authorizes the appropriation of it to any county purpose. Such provisions would validate the acquisition of the property. 2 Dill. Mun. Corp. 560. Besides, on the general principle, if the taking of the title was not for an authorized purpose, the state alone is competent to make objection. Id. 574.

It is also contended that the statute is obnoxious to section 10 of article 1 of the constitution of the United States, which prohibits legislation impairing the obligation of contracts. But this assumes a contract which is legally valid, and the county denies the existence of any such contract. The legislature concedes this, and imposes the duty upon other grounds, which it is empowered to take notice of for the purpose of determining whether, independently of the existence of a contract, a moral obligation rests upon the county. Moreover, the county being a mere governmental agency of the state, its contracts for public purposes, so long as they remain unperformed, are, as between the county and the state, subject to the control of the legislature. The county has no vested right in such case which it can oppose to the paramount authority. Maryland v. Baltimore & O. R. Co., 3 How. 534, 11 L. Ed. 714; Board v. Lucas, 93 U. S. 108, 23 L. Ed. 822; Board v. Skinkle, 140 U. S. 334, 11 Sup. Ct. 790, 35 L. Ed. 446.

For the reasons stated, we are of opinion that the circuit court erred in sustaining the demurrer. The judgment is accordingly reversed, and the cause remanded, with directions to overrule the demurrer and take such further proceedings in the case as it may be advised, not inconsistent with this opinion.