## NATIONAL LABOR RELATIONS BOARD v. TIDEWATER EXP. LINES, Inc.

### No. 4163.

Circuit Court of Appeals, Fourth Circuit.

May 10, 1937.

Charles Fahy, Gen. Counsel, National Labor Relations Board, of Washington, D. C. (Robert B. Watts, Associate Gen. Counsel, and Malcolm F. Halliday, Atty., National Labor Relations Board, both of Washington, D. C., on the brief), for petitioner.

Francis Key Murray and George Ross Veazey, both of Baltimore, Md., for respondent.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

PER CURIAM.

This is a petition by the National Labor Relations Board for a decree enforcing its order entered against the Tidewater Express Lines, a corporation admittedly engaged in interstate commerce. The order is based on findings to the effect that respondent has discharged two of its employees because of their membership and activity in labor unions. The order requires respondent to cease and desist from discouraging membership in the unions and from interfering in any way with the right of self-organization for the purpose of collective bargaining on the part of its employees. It directs respondent to reinstate the discharged employees and to reimburse them for loss of wages resulting from their discharge. The respondent does not question that the findings upon which the order is based are amply supported by the evidence; but it resists the order on the ground that the Wagner Act (National Labor Relations Act, § 1 et seq., 29 U.S. C.A. § 151 et seq.) as a whole is unconstitutional, that the portion of the order directing reimbursement for lost wages violates the guaranty of jury trial contained in the Seventh Amendment, and that, in so far as the order prevents respondent from requiring contracts of its employees as a condition of employment that they will not join labor unions, it runs counter to the decisions in Coppage v. Kansas, 236 U.S. 1, 35 S.Ct. 240, 59 L.Ed. 441, L.R.A.1915C, 960, and Adair v. United States, 208 U.S. 161, 28 S.Ct. 277, 52 L.Ed. 436, 13 Ann.Cas. 764.

None of the contentions of respondent can be sustained. The case is gov-

erned in all of its aspects by our decision in National Labor Relations Board v. Washington, Virginia & Maryland Coach Co. (C.C.A.4th) 85 F.(2d) 990, affirmed by the Supreme Court of the United States 57 S.Ct. 648, 81 L.Ed. ——, and by the decision of the Supreme Court in that case and the companion case of National Labor Relations Board v. Jones & Laughlin Steel Corp., 57 S.Ct. 615, 622, 81 L.Ed. ——. With respect to the contention that respondent has the right to require of its employees as a condition of employment that they enter into individual contracts not to join a union, we think that such a requirement is directly in conflict with sections 7 and 8 of the act (29 U.S.C.A. §§ 157, 158), which was intended to safeguard the right of employees to self-organization and to further collective bargaining as an instrument of industrial peace. In the case last cited the Supreme Court said:

"Employees have as clear a right to organize and select their representatives for lawful purposes as the respondent has to organize its business and select its own officers and agents. Discrimination and coercion to prevent the free exercise of the right of employees to self-organization and representation is a proper subject for condemnation by competent legislative authority. Long ago we stated the reason for labor organizations. We said that they were organized out of the necessities of the situation; that a single employee was helpless in dealing with an employer; that he was dependent ordinarily on his daily wage for the maintenance of himself and family; that, if the employer refused to pay him the wages that he thought fair, he was nevertheless unable to leave the employ and resist arbitrary and unfair treatment; that union was essential to give laborers opportunity to deal on an equality with their employer. American Steel Foundries v. Tri-City Central Trades Council, 257 U.S. 184, 209, 42 S.Ct. 72, 78, 66 L.Ed. 189, 27 A.L.R. 360. We reiterated these views when we had under consideration the Railway Labor Act of 1926, 44 Stat. 577. Fully recognizing the legality of collective action on the part of employees in order to safeguard their proper interests, we said that Congress was not required to ignore this right but could safeguard it. Congress could seek to make appropriate collective action of employees an instrument of peace rather than of strife. We said that such collective action would be a mockery if rep-

resentation were made futile by interference with freedom of choice. Hence the prohibition by Congress of interference with the selection of representatives for the purpose of negotiation and conference between employers and employees, 'instead of being an invasion of the constitutional right of either, was based on the recognition of the rights of both.' Texas & N. O. R. Co. v. Railway & S. S. Clerks [281 U.S. 548, 50 S.Ct. 427, 74 L.Ed. 1034], supra. We have reasserted the same principle in sustaining the application of the Railway Labor Act as amended in 1934 (45 U.S.C.A. § 151 et seq.). Virginian Railway Co. v. System Federation, No. 40 [57 S.Ct. 592, 81 L.Ed. ——] supra. * * *

"The theory of the act is that free opportunity for negotiation with accredited representatives of employees is likely to promote industrial peace and may bring about the adjustments and agreements which the act in itself does not attempt to compel. As we said in Texas & N. O. R. Co. v. Railway & S. S. Clerks, supra, and repeated in Virginian Railway Co. v. System Federation, No. 40, the cases of Adair v. United States, 208 U.S. 161, 28 S.Ct. 277, 52 L.Ed. 436, 13 Ann.Cas. 764, and Coppage v. Kansas, 236 U.S. 1, 35 S.Ct. 240, 59 L.Ed. 441, L.R.A.1915C, 960, are inapplicable to legislation of this character. The act does not interfere with the normal exercise of the right of the employer to select its employees or to discharge them. The employer may not, under cover of that right, intimidate or coerce its employees with respect to their self-organization and representation, and, on the other hand, the Board is not entitled to make its authority a pretext for interference with the right of discharge when that right is exercised for other reasons than such intimidation and coercion. The true purpose is the subject of investigation with full opportunity to show the facts. It would seem that when employers freely recognize the right of their employees to their own organizations and their unrestricted right of representation there will be much less occasion for controversy in respect to the free and appropriate exercise of the right of selection and discharge. * * *

"It is argued that the requirement is equivalent to a money judgment and hence contravenes the Seventh Amendment with respect to trial by jury. The Seventh Amendment provides that 'In suits at common law, where the value in controversy

shall exceed twenty dollars; the right of trial by jury shall be preserved.' The amendment thus preserves the right which existed under the common law when the amendment was adopted. Shields v. Thomas, 18 How. 253, 262, 15 L.Ed. 368; In re Wood, 210 U.S. 246, 258, 28 S.Ct. 621, 52 L.Ed. 1046; Dimick v. Schiedt, 293 U. S. 474, 476, 55 S.Ct. 296, 79 L.Ed. 603, 95 A.L.R. 1150; Baltimore & Carolina Line v. Redman, 295 U.S. 654, 657, 55 S.Ct. 890, 891, 79 L.Ed. 1636. Thus it has no application to cases where recovery of money damages is an incident to equitable relief even though damages might have been recovered in an action at law. Clark v. Wooster, 119 U.S. 322, 325, 7 S.Ct. 217, 30 L.Ed. 392; Pease v. Rathbun-Jones Engineering Co., 243 U.S. 273, 279, 37 S.Ct. 283, 61 L.Ed. 715, Ann.Cas.1918C, 1147. It does not apply where the proceeding is not in the nature of a suit at common law. Guthrie National Bank v. Guthrie, 173 U. S. 528, 537, 19 S.Ct. 513, 43 L.Ed. 796."

And with respect to the limitation upon freedom of contract which these sections of the statute may be said to impose, the following quotation from West Coast Hotel Co. v. Parrish, 57 S.Ct. 578, 582, 81 L.Ed. ——, is apposite:

"This essential limitation of liberty in general governs freedom of contract in particular. More than twenty-five years ago we set forth the applicable principle in these words, after referring to the cases where the liberty guaranteed by the Fourteenth Amendment had been broadly described. 'But it was recognized in the cases cited, as in many others, that freedom of contract is a qualified, and not an absolute, right. There is no absolute freedom to do as one wills or to contract as one chooses. The guaranty of liberty does not withdraw from legislative supervision that wide department of activity which consists of the making of contracts, or deny to government the power to provide restrictive safeguards. Liberty implies the absence of arbitrary restraint, not immunity from reasonable regulations and prohibitions imposed in the interests of the community.' Chicago, Burlington & Quincy R. Co. v. McGuire, 219 U.S. 549, 565, 31 S.Ct. 259, 262, 55 L.Ed. 328. * * * In dealing with the relation of employer and employed, the Legislature has necessarily a wide field of discretion in order that there may be suitable protection of health and safety, and that peace and good order may be promoted through regulations designed to insure wholesome conditions of work and freedom from oppression."

A decree will be entered enforcing the order of the Board.

Decree accordingly.