THE STATE OF DELAWARE, Upon the Relation of the FERRIS INDUSTRIAL SCHOOL, vs. THE LEVY COURT OF NEW CASTLE COUNTY.

*Mandamus—Construction of Constitution—State Appropriations— Political Subdivisions of State—Appropriations to Private Corporations—Public Appropriations.*

1. Counties, cities &c., are political subdivisions of the state, which is the concrete whole. When an appropriation is made by the financial agents of the county under and by virtue only of authority given by the legislature of a state, it is an appropriation made by the state through one of its subdivisions. This doctrine takes the Ferris Industrial School, in part sustained by appropriations of the Levy Court, out of the operation of Section 1, of Article 9, of the Constitution, and the amendment of May 20, 1898, to its charter, is therefore constitutional and valid, even though it should be considered a private corporation.

2. The appropriation authorized by said amendment is not to the corporation as such, but by its express language is " towards the maintenance and education of each boy committed to the custody of the board of managers by the courts "; and it may be considered nothing more nor less than a contribution on the part of the state towards the maintenance of the minors in some other place than the common jail. The right so to maintain in some other place cannot be disputed. An appropriation towards the maintenance of the inmates of The Ferris Industrial School who have been committed to its custody by the state authorities, is not within either the letter or spirit of Section 8, Article 8, of the Constitution which forbids a county to lend its credit or appropriate money to, or assume the debt of, or become a shareholder or joint owner in or with any private corporation or any company or person whatever. Such appropriation is broadly public and impersonal in its scope.

*(March 28, 1899.)*

LORE C. J., and PENNEWILL and BOYCE, J. J., sitting.

*J. Frank Ball* for the relator.

*John H. Rodney* for the respondent.

Superior Court, New Castle County, February Term, 1899.

MANDAMUS (No. 10, February Term, 1898.)

The facts of the case and the contentions in the arguments of the respective counsel sufficiently appear in the opinion of the court.

LORE, C. J.,—"The Ferris Industrial School" under the name of "Ferris Reform School," was organized under an act of incorporation passed at Dover March 10, 1883.

By the terms of the act, the following persons became members of the corporation : those named in the charter; such as might pay forty dollars in lump or such as might pay eight dollars annually for six years, and such as might pay two dollars annually during membership.

Such members had the authority to elect a board of managers for the government and control of the affairs of the institution. Of this board, the Mayor of the City of Wilmington, the Judge of the Superior Court residing in New Castle County, and the President of the Levy Court of New Castle County were *ex officio* members.

This board was clothed with the authority to provide lands and buildings in New Castle County for the school, and to establish "by laws, ordinances and regulations relative to the religious and moral education, training, employment, discipline, management, government, safe keeping and disposition of the inmates, not contrary to law, as they may deem expedient."

The only inmates authorized by the charter were :

*First*, incorrigible or vicious minors, committed to the custody of the board of trustees, by the Municipal Court of the City of Wilmington, or by any justice of the peace of New Castle County; on complaint of the parent, guardian or next friend.

*Second*, such vagrant, incorrigible or vicious minor, so committed, because the parent, guardian or custodian of such minor, was incapable or unwilling to exercise proper control over him.

*Third*, males between nine and sixteen years of age, committed to the custody of the board, by the Court of General Sessions of the State of Delaware, in and for New Castle County; the Municipal Court of the City of Wilmington, or by any justice

of the peace of said county ; upon complaint of vagrancy or other
criminal offense before them, and proof thereof ; or upon acquittal,
if upon the testimony such minor should be considered a proper
object for the school.

The board of managers had discretion as to accepting minors
committed under clauses one and two ; but could not reject any
minor committed under the third clause, unless the crime charged
against him was homicide, arson or rape.

Section 8 of the act of incorporation, authorized the Levy
Court of New Castle County to make "appropriations annually
to the said corporation for the purposes of its incorporation."

Under this authority, the said Levy Court had from time to
annually up to the year 1898, made appropriations to the
orporation of sums of money varying from five hundred
up to five thousand.

e corporation was duly organized under the provisions of
arter. Some months thereafter, Dr. Caleb Harlan, the
r and trustee under the will of John Ferris, late of Wil-
n City, deceased, transferred and delivered to the said
tion, the residue of the estate of the decedent, under the
ing provision of his will; wherein he gave to the said
Harlan the said residue to be "applied by him for the
pport of any of the necessitous portion of the human family,
hat may come to his knowledge, either directly or indirectly, by
the agency of such institutions as he may select, hereby giving
him full authority to use the same as he may deem best, not
taking needless care therein, nor being accountable for loss in
investing the same or otherwise, as it is far from my intention
that the charge thereof shall be burdensome to him. I might
suggest that the application of said residue or a portion thereof
to be used in establishing what is known mostly as a house of
refuge, or place for bettering wayward juveniles would have my
approval, should there be probability of having established in
this vicinity in reasonable time such an institution."

With this fund buildings and lands were bought and the
school put in operation. With the residue of this fund and the
fund arising from other gifts and donations and the dues of

members, together with the annual appropriation made by the Levy Court, the school has since been supported and maintained.

The following amendment to the charter was passed by the legislature, and approved May 20, 1898:

"Be it enacted by the Senate and House of Representat of the State of Delaware in General Assembly met; (two-th of each branch thereof concurring):

"SECTION 1. That the act entitled "An act to incorp the Ferris Reform School,' passed at Dover, March 10, 18 and the same is hereby amended by striking out all of Sec of said act, and inserting in lieu thereof the following: 'S 8. The Levy Court of New Castle County shall provid appropriate annually, the sum of one hundred dollars towa maintenance and education of each boy committed to the of the board of trustees of the said school, under *section* act; so long as he may remain in said custody. This p shall apply to all those who are now in the custody of t trustees, as well as to those who hereafter may be comm their custody. The said board of managers shall, on o the first day of March of each year, certify in writing Levy Court the number of boys so committed and still in custody on the first day of January of each year; which nu so certified shall govern the aggregate amount of the appropr tion for the year in every case. *Provided*, the sum so appropriated shall not exceed the sum of five thousand dollars for any one year." *21 Del. Laws, 213.*

Under this act, The Ferris Industrial School claims that it is entitled to have from the Levy Court of New Castle County the sum of five thousand dollars for the year 1898, and seeks in this proceeding to enforce payment of the same by the Levy Court of New Castle County by writ of peremptory mandamus. The Levy Court resists payment upon the grounds:

*First*, that this school is a private corporation. That the appropriation claimed is expressly prohibited by *Section 8 of Article 8 of the new Constitution*, viz: "No county, city, town or other municipality shall lend its credit or appropriate money to,

or assume the debt of, or become a shareholder or joint owner in or with any private corporation or any person or company whatever."

*Second*, because the amendment to the charter was made by a special act of the legislature in contravention of *Section 1, Article 9 of the Constitution*, viz : " No corporation shall hereafter be created, amended, renewed or revived by special act, but only by or under general law, nor shall any existing corporate charter be amended, renewed or revived by special act, but only by or under general law ; but the foregoing provisions shall not apply to municipal corporations, banks or corporations for charitable, penal, reformatory, or educational purposes, sustained in whole or in part by the state."

We will consider the latter objection first.

Corporations for charitable, penal, reformatory or educational purposes sustained in whole or in part by the state, are expressly excepted from the operation of said Section 1, Article 9.

The Ferris Industrial School, by the terms of its charter, is for the " religious and moral education, training, employment, discipline, management, government and safe keeping," of the minors so committed to it, and is therefore penal, reformatory and educational in its purposes ; and if sustained in whole or in part by the state is not within the inhibition of said Section 1, Article 9.

It is conceded, that the Levy Court of this county, under and by virtue of legislative authority, contained in the original charter, has, for a number of years past, made appropriations to the incorporation annually for its maintenance. Such appropriations could only have been made, and in fact were made, solely under legislative authority, by the Levy Court, which is the financial agent of New Castle County—a political division of the state.

May such appropriation be considered as a sustaining of the said institution in whole or in part by the state, within said Section 1, Article 9?

Upon this point, Justice Strong in *Railroad Company vs. The County of Otoe*, *12 Wallace*, *676*, says : "Counties, cities and towns exist only for the convenient administration of the government. Such organizations are instruments of the state, created to carry out its will. When they are authorized or directed to levy a tax, or to appropriate its proceeds, the state through them is doing indirectly what it might do directly."

In the case of *Bay City vs. State Treasurer*, *23 Mich.*, *499*, where it was claimed that the provision of the Constitution prohibiting the state from loaning the public credit to private corporations did not extend to subdivisions of the state, Judge Cooley, delivering the opinion of the court, uses this language :

"It was discovered that though the state was expressly inhibited from giving such aid in any form, except in the disposition of grants made to it, the subdivisions of which the state was composed were not under the like ban. Decisions in other states were found which were supposed to sanction the doctrine that, under such circumstances, the state might do indirectly through its subdivisions what directly it was forbidden to do. Thus the way was open by which the whole purpose of the constitutional provisions quoted might be defeated. The state could not aid a private corporation with its credit, but it might require each of its townships, cities and villages to do so. The state could not load down its people with taxes for the construction of a public improvement, but it might compel the municipal authorities, which were its mere creatures, and which held their whole authority and their whole life at its will, to enforce such taxes, one by one, until the whole people were bent to the burden.

"Now, whatever might be the just and proper construction of similar provisions in the constitutions of states whose history has not been the same with our own, the majority of this court thought when the previous case was before us, and they still think, that these provisions in our Constitution do preclude the state from loaning the public credit to private corporations, and from imposing taxation upon its citizens or any portion thereof in aid of the construction of railroads."

This doctrine is sustained in the case of *State vs. Wapello County, 13 Iowa 388*, and also in the *People vs. Salomon, 51 Ill. 37;* which question and overrule previous adverse rulings in former cases decided in those states. In the latter case the court say : "The whole legislative power of the state is conferred by the Constitution upon the General Assembly." * * * "The members of the two houses, are the constitutional agents of the public will in every district or locality of the state, and they may therefore, so arrange the powers to be given and executed therein, as convenience, the efficiency of administration, and the public good may seem to require, by committing some functions to local jurisdictions already established, or by establishing local jurisdictions for that express purpose."

The underlying principle of these three cases is, that counties, cities etc., are political subdivisions of the state, and are included in the term *state*, which is the concrete whole. Whatever is done by such division, under and by virtue of the permission or mandate of the state only, is the act of the state *quo ad hoc*, and may reasonably and properly be designated as state action ; at least *indirectly*, in the language of Judge Strong above quoted. In this sense a county debt created by authority of the legislature, is the act of the state being created by the exercise of the state sovereignty acting through one of its political divisions. This however, would not make the state, as a whole, liable for the payment of such debt, because in its creation and under the contract with the lender, the liability for such payment was expressly limited to the property within the county limits.

So that it may be considered settled, in cases like the present, that when the appropriation is made by the financial agents of the county under and by virtue only of authority given by the legislature of a state, that it is an appropriation made by the state through one of its subdivisions. This doctrine takes The Ferris Industrial School, so in part sustained by appropriations of the Levy Court, out of the operation of *Section 1 of Article 9 of the Constitution.* Therefore the amendment of May 20, 1898, to the charter is constitutional and valid, even

though The Ferris Industrial School should be considered a private corporation for the purpose of this inquiry.

Assuming it to be a private corporation, however the question still remains ; is not this the appropriation of money to a private corporation, within the prohibition of *Section 8 of Article 8 ?*

The appropriation authorized by the said amendment, does not seem to come either within the language of the said section, or within the evil sought to be remedied thereby.

The appropriation is not to the corporation as such, but by its express language is " toward the maintenance and education of each boy committed to the custody " of said board of managers by said courts ; and may be considered nothing more nor less than a contribution on the part of the state toward the maintenance of the said minors in some other place than the common jail. The right so to maintain in some other place, is expressly admitted by counsel for the respondent, if done in a legal manner.

It will not be disputed, that the legislature may authorize or direct the Levy Court of the county to commit any portion of its criminals to the custody of such persons as the legislature may indicate, outside of the common jail ; that it may authorize or direct appropriations to be made by the Levy Court, to pay for the maintenance of such criminals while in such custody. It would be unreasonable to hold, that payment of money so made, to meet the burden imposed, would be an appropriation to the custodian in a private sense, for private purposes, when in fact it would only be payment of a just obligation.

Would it not be equally unreasonable to hold, that an appropriation toward the maintenance of the inmates of The Ferris Industrial School, who have been committed to its custody by the state authorities, is within either the letter or spirit of *Section 8, Article 8 of the Constitution*, which forbids a county, "to lend its credit or appropriate money to, or assume the debt of, or become a shareholder or joint owner in or with any private corporation or any company or person whatever." Such appropriation is so broadly public and impersonal in its scope and

character as to rebut if not rebuke any suggestion of private emolument or private interest, within the intendment of the *Constitution* which clearly means that the county shall not be a party in or to private corporations.

Upon the assumption, therefore, that this is a private corporation, for the above reasons we consider this appropriation not to be within the prohibition of either *Section 8, Article 8, or of Section 1, Article 9 of the Constitution ;* for the reason that the corporation being penal, reformatory and educational in its purposes, the amendment to its charter might lawfully be made by special act of assembly ; because also the appropriation is not made to the corporation as such but expressly toward the maintenance of the inmates so committed by state authority.

This view of the law makes it unnecessary for us to consider and determine, whether The Ferris Industrial School is a public or private corporation.

For the reasons stated, we think the relator is entitled to the remedy asked for in this action, and order that a peremtory writ of mandamus be issued.