# CHARLESTON

## KENDALL *v.* DUNN.

Submitted June 9, 1911.   Decided November 12, 1912.

1. BREACH OF MARRIAGE PROMISE—*Measure of Damages.*

In an action for damages for breach of a promise of marriage, where the facts and circumstances and the reasonable inferences therefrom warrant, the jury may properly be instructed to take into consideration, in assessing the damages, the financial circumstances and social position of defendant; the rights and privileges plaintiff would have acquired.pecuniarily and socially if defendant had performed his contract; the worldly advantage of the marriage as giving plaintiff a permanent home and advantageous establishment; the station in life plaintiff would have occupied as a result of the marriage; the injuries and wounds to plaintiff's feelings, affection, and pride; the disappointment, humiliation, mortification, contempt, pain and distress of mind plaintiff suffered at the loss of the marriage; and the injury to plaintiff's reputation and future prospects of marriage.  (p. 263).

2. SAME—*Offer to Renew—Mitigation of Damages.*

Where defendant's breach of the contract for marriage is complete and plaintiff has thereafter signified intention to treat the contract as terminated except for action thereon, an offer by defendant to renew and perform constitutes no defense to the action; though the offer to renew and perform, if made before suit brought, may usually be given such weight by the jury, merely as bearing on the amount of damages, as they may deem the facts and circumstances in connection therewith to warrant.  (p. 265).

3. SAME—*Offer to Renew—Effect.*

An offer by defendant to renew and perform the contract for marriage, made after action is begun on the breach, consti-

tutes no defense, nor can it be heard in mitigation of the damages or as bearing on the amount of the same. (p. 268).

Error to Circuit Court, Monroe County.

Action by Mattie B. Kendall against L. B. Dunn. Judgment for plaintiff, and defendant brings error.

*Affirmed.*

*Rowan & Meadows,* for plaintiff in error.

*John W. Arbuckle,* for defendant in error.

ROBINSON, JUDGE:

Plaintiff, forty-two years old and no doubt comely, sued defendant, seventy-six years old and well-to-do, for forty thousand dollars damages because he did not keep his promise to marry her. She recovered, through the verdict of a jury, a judgment against him for $2,408.33. A reversal and new trial are sought.

The verdict is by no means contrary to the evidence. The promise is admitted by defendant in his testimony; the breach is proved by the testimony of plaintiff and by facts and circumstances which corroborate her testimony in that regard. The jury were fully warranted in finding that defendant broke his promise to marry plaintiff. They were the judges of the amount of compensation that she should have for the injury. The damages found are not excessive.

The brief on behalf of defendant is devoted wholly to complaint in regard to instructions. No other points are relied on in the argument. A review of the objections lead us to say that they are not well taken. Let us now, as briefly as may be, notice these objections.

In plaintiff's first instruction the jury were told that if they found from the evidence that a contract was made between the parties whereby defendant promised to marry plaintiff, and that defendant broke the contract and refused to comply with his promise, then the plaintiff was entitled to recover, and they might so find. The instruction then proceeds: "In ascertaining, determining and assessing plaintiff's damages, not to exceed the amount sued for, the jury should take into consideration the financial circumstances of the defendant; his social position, and all the rights and privileges the plaintiff would have acquired pecuniarily and socially if the defendant had performed his con-

tract; the worldly advantage of a marriage which would have giv-
en her a permanent home and an advantageous establishment;
the injuries and wounds to plaintiff's feelings, affection and
pride, the disappointment, humiliation, mortification, contempt,
pain and distress of mind she suffered at the loss of the marriage,
and the station in life plaintiff would have occupied as a result of
her marriage; injury to her future prospects of marriage; injury
to her reputation, moral or physical, resulting from the defend-
ant's refusal to perform his promise." It is submitted that this
instruction is wrong—that in assessing the damages the jury
could take into consideration only "injured feelings, anxiety of
mind, wounded pride, or blighted affections." But under the
facts and circumstances proved in this case and the reasonable
inferences arising therefrom, this instruction was a proper one
except in a particular of mere surplusage as to which we shall
speak. The case called for a consideration of the elements of
damages named in the instruction, except in that one particular.
The law warrants a consideration of such elements in a case like
this one. 2 Sedgwick on Damages, (Ninth Edition), secs. 638,
638a, 638b, 639a, 641; 3 Sutherland on Damages, (Third Edi-
tion), secs. 986-988.

Our attention is directed to the use of the phrase "injury to
her reputation, moral or physical." This phrase has been before
used in a breach of promise case. *Goddard* v. *Westcross,* 82
Mich. 180. However, in that case there was evidence on which
to base injury to the plaintiff's physical reputation. There it was
claimed the defendant, as an excuse for the breach, had circu-
lated statements accusing the plaintiff of physical disease. It is
not so in this case; for the only injury to plaintiff's reputation
which the jury could find is that which they might say naturally
arose from the notoriety of the broken engagement. The words
"or physical" were not in place. As trial judges, we would not
have used them, but it would be going far to reverse the judgment
merely because the instruction contained them, when the facts
and circumstances in evidence did justify a consideration of in-
jury to her moral reputation. The instruction did not bind the
jury to a consideration of injury to physical reputation, for in
that regard it is in the disjunctive. The words used "or physical",
are quite different from "and physical." We shall not assume

that they carried weight to the jury in the face of the fact that
no injury to physical reputation was proved or could be inferred
from the evidence.  In the ordinary reasoning of intelligent jur-
ors, these words as applied in this case would be considered as
mere surplusage.  On the whole case, we clearly see that the use
of these words of surplusage did not mislead the jury.  We must
not be prone to reverse on slight grounds.

Another objection urged as to the instruction is that it pre-
cludes the consideration of anything mitigative of the damages.
It does not do so.  Besides, if the evidence warranted a theory of
mitigation, defendant could have asked an instruction on that
subject.  He asked none on that score.  But the court did deal
with the subject of mitigation, as we shall presently show, in such
a way that defendant's rights in that particular were by no means
prejudiced.

For a clear disposition of the objections made to another of
the instructions given at plaintiff's instance, we must set out the
whole of it as follows:   "The court instructs the jury that if they
believe from the evidence in this case, that plaintiff Mattie B.
Kendall and the defendant L. B. Dunn entered into a contract
whereby the said defendant L. B. Dunn contracted with and
promised to marry the plaintiff, Mattie B. Kendall, as alleged by
her, and that said defendant refused to marry plaintiff prior to
the institution of this action, it was an absolute repudiation of
the contract; and that plaintiff was justified in treating it as
having been violated and suing for damages for the breach there-
of.  That plaintiff was no longer bound to perform the contract
after refusal of performance, by the defendant, and that a sub-
sequent offer of performance, by the defendant, after the plain-
tiff, (the injured party) had signified her intention to terminate
it, constitutes no defence to this action for the breach of said con-
tract.  That said offer after this action was brought, is not
ground for mitigation of damages.  And the jury should find
for the plaintiff such damages as they adjudge right not exceed-
ing the amount sued for."

This instruction is objected to because it told the jury that
an offer by defendant to perform, made after defendant broke
the contract and after plaintiff, because of the breach, had sig-
nified her intention to terminate the contract, was no defense to
the action.  It is said that this statement of the law is contrary

to the holding in *Connolly* v. *Bollinger,* 67 W. Va. 30, which asserts that such a subsequent offer of performance "does not bar recovery." It is argued that there is a great difference between "constitutes no defense to the action" and "does not bar recovery" —that the former phrase precludes mitigation of damages. Certain it is, however, the phrase complained of is the language of the text writers and courts in this connection generally. The word "defense" is used in the sense of "bar." 5 Cyc 1004; 2 Parsons on Contracts, (Eighth Edition), 68; *Holloway* v. *Griffith,* 32 Iowa 409; *Kurtz* v. *Frank,* 76 Ind. 594; *Southard* v. *Rexford,* 6 Cow. (N. Y.) 254. The use of the word "defense" instead of the word "bar" in the instruction before us could not be understood to eliminate from the consideration of the jury any question of mitigating the damages because of a renewed offer to marry before the suit was instituted. In the very next sentence, the jury were told that an offer to renew and perform would not mitigate the damages if made after the suit was brought. Were not the jury thereby virtually told that mitigation could be considered as to an offer made before the suit was brought? The instruction in effect told them that mitigation of damages on account of an offer to renew and perform was limited to such an offer made before the suit was instituted. It did not totally bar a consideration of mitigation of damages on account of such an offer, as is contended.

We have had doubt as to whether the instruction left to the jury a question as to which the evidence was conflicting. Did it allow the jury to find whether the offer to renew and perform was made before or after the suit was brought? Or, did it assume and tell the jury that the subsequent offer was made after the institution of the suit? After mature reflection we are of opinion that the instruction sufficiently submitted to the jury this controverted question. The evidence plainly proved an offer to perform made subsequent to the breach. The only controversy in relation to that offer was whether it was made before or after suit was brought. The instruction did, we think, contemplate a determination of this question by the jury. It did not directly assert that the offer was made at any particular time. It did say "that said offer after this suit was brought is not ground for mitigation of damages." But this is only one way of saying "that said offer if made after this suit was brought is

not ground for mitigation of damages." In the light of the case before them, the jury could not reasonably have interpreted it otherwise.

Then was the instruction sound in law? We may readily approve it in that regard except as to the proposition that an offer to marry subsequent to the breach but after suit is brought is not ground to mitigate the damages. As we have stated, this indirectly asserts that damages may be mitigated by an offer before suit is brought. May the damages be mitigated by an offer to renew and perform? And if so, is mitigation on this score limited to such an offer made before the bringing of the suit?

An eminent authority says: "An offer of the defendant, after breach, to marry the plaintiff may be shown as bearing on the amount of damages. This is perhaps not properly mitigation of damages. * * * Under certain circumstances the offer will not mitigate the damages; as where the defendant by his misconduct has made an acceptance of the offer impossible." 2 Sedgwick on Damages, sec. 641c. Another says: "It is doubtful if any hard-and-fast rule can be laid down on this proposition. The facts and circumstances of the whole case will determine whether such evidence is to be received or rejected." 3 Sutherland on Damages, (Third Edition), sec. 990. That which the Indiana court has written is quite pertinent: "The fact and circumstances of the refusal or breach may often be such as to bar the possibility, or at least the probability, of any happy results from marriage, between the parties, and the defendant, in such a case, should not escape the consequences of his willful breach of the engagement by offering to consummate a marriage whose auspices were already beclouded by his bad faith and deceit. * * * How far such an offer to renew and perform the broken engagement may go in mitigation of damages, must be left in each case to the jury, or to the court trying the case." *Kurtz* v. *Frank, supra.* The decision from which we have just quoted deals with a case in which the offer to renew and perform was made before suit brought. Indeed the only case we have observed that sanctions mitigation for such an offer after suit is *Kelly* v. *Renfro,* 9 Ala. 441. Strong reasons against permitting proof of such an offer after suit is brought are found in *Bennett* v. *Beam,* 42 Mich. 346.

We conclude that the jury may, when the circumstances war-

rant, take into consideration in assessing the damages proof of an offer to renew and perform made prior to the beginning of a suit on the breach. But we can not sanction the mitigating of damages by an offer to renew and perform after suit brought. It is clearly against the well established general principle that evidence of facts occurring after the beginning of suit can not be given in aggravation or mitigation of damages. *Greenleaf* v. *McColley,* 14 N. H. 303; *Miller* v. *Hayes,* 34 Iowa 496. In a breach of promise case, Judge LUCAS referred to this principle, saying: "The general rule, however, in all such cases, is that no evidence can be given of any fact having a tendency to aggravate or diminish the damages, which has occurred after the commencement of the suit." *Dent* v. *Pickens,* 34 W. Va. 240.

The instruction propounded correct principle wherein it forbade a mitigating of the damages because of any offer to renew and perform made after the beginning of the suit. Under this instruction, if the jury believed from the evidence that the offer was made prior to the bringing of the suit, they could give the fact such weight in assessing the damages as they thought it deserved in the light of all the proof attending it. Thus the instruction did not deny any right in this connection to which defendant was entitled.

The two instructions given for defendant quite fairly presented about the only theory of the case on which he could rely under the evidence. One of those refused, predicated on the jury's believing that no day for the marriage had been agreed upon, was clearly not warranted by the evidence, for both plaintiff and defendant testified that a day had been fixed. Two others were properly refused, since they would have narrowed a consideration of the damages solely to those arising from "injured feelings, anxiety of mind, wounded pride and blighted affections." The evidence justified a consideration of other elements of damages also. Of the remaining two, neither was good. They were bad because they omitted a most important condition—the jury's believing that at no time did defendant break the contract to marry. It will serve no great purpose more definitely to explain. Counsel will understand. The point is not important.

Finding no error to the prejudice of defendant, we affirm the judgment.

*Affirmed.*