JOSIAH O. WOLCOTT, Attorney General of the State of Delaware, at and by the relation of THE TAXPAYERS' LEAGUE, INCORPORATED, a corporation of the State of Delaware,

*vs.*

THE MAYOR AND COUNCIL OF WILMINGTON, a municipal corporation of the State of Delaware; THE COUNCIL of the said The Mayor and Council of Wilmington; HARRISON W. HOWELL, Mayor of the said City of Wilmington; SAMUEL C. BIDDLE, Auditor of the said City of Wilmington; JAMES F. PRICE, Treasurer of the said City of Wilmington; WILLIAM E. JOHNSON, Building Inspector for the said City of Wilmington; WILLIAM P. WHITE, President of the said Council; JACOB ZIMMERMANN, WILLIAM H. COOK, JOHN L. McGOLDRICK, JAMES KANE, OSCAR C. DRAPER, JOHN O. HOPKINS, WELLER E. STOVER, BURTON S. HEAL, GEORGE E. GRANTLAND, JOHN J. HANEY, JOSEPH L. McDERMOTT and ALBERT N. WILLIAMS, members of the said Council; CLARENCE M. DILLON, Clerk of the said Council; the said WILLIAM P. WHITE, WELLER E. STOVER and WILLIAM E. JOHNSON, constituting the Board of Assessment, Revision and Appeals for the said City of Wilmington; and THE UNION NATIONAL BANK.

*New Castle, Feb.* 6, 1915.

17 *Delaware Laws, c.* 207, §47, provided, that the salaries of certain officers of the City of Wilmington should not be less than certain amounts,

and, as amended, gave to members of the Board of Assessment, Revision, and Appeals, the salary of $150 per annum, and further provided that the City Council should have no authority to augment or reduce the salary of any officer during the period of his election or appointment, and that no officer whose salary was fixed by the act should receive any fees or emoluments in addition to those prescribed by said act. By 24 *Delaware Laws*, c. 177, §15, amending 17 *Delaware Laws*, c. 207, §31, defining the powers of the City Council, the Council was given power "to fix the salaries of all officers and employes paid by said council." *Held*, that the Council could not do by indirection and subterfuge what it might not do directly, and, since 24 *Delaware Laws*, c. 177, §15, cl. 3, giving the Council power and authority to fix the salary of all officers and employes paid by said Council, did not remove from the Council the prohibitions of 17 *Delaware Laws*, c. 207, §47, an ordinance of the Council entitled "An Ordinance to Amend an Ordinance Entitled an Ordinance Defining the Salaries of the Officers of the City," and giving to the Board of Assessment, Revision, and Appeals $1,500 extra compensation for extra duties imposed by 27 *Delaware Laws*, c. 205, to be divided as the board might see fit between its members, was void, whether such additional compensation was a "fee" or "emolument," compensation for extra work after it is done, or a "salary," fixed compensation for official services to be rendered, the work not having been performed without the city, so as to bring the case under the provision of 17 *Delaware Laws*, c. 207, §47, providing that, whenever a city official is called by city business outside the city limits, the Council shall allow to such official his traveling expenses and other proper and reasonable compensation.

STATEMENT OF FACTS. The Attorney General, upon the relation of the Taxpayers' League, Incorporated, the owner of real estate in the City of Wilmington, filed an information in this court against the Mayor and Council of Wilmington, a municipal corporation of the State of Delaware, and the Mayor, the members of the Council, the City Auditor, the City Treasurer, the Building Inspector, and the three persons who *ex officio* constituted the Board of Assessment, Revision and Appeals of Wilmington, and also the Union National Bank of Wilmington, the bank being the depository of the moneys belonging to the City, and the purpose is to perpetually enjoin the payment to the members of the Board of certain moneys pursuant to a certain ordinance.

It was alleged that the salaries, or compensation, of the members of this Board was fixed by ordinance at $150 per

annum, and this was all they were lawfully entitled to receive in any one year for services as members of the Board, and were not entitled, either collectively or separately, to receive any appropriation of money, compensation, fee, or emolument in addition. The Council, however, on Thursday, the 14th day of May, 1914, at 8 o'clock p. m., passed the following ordinance:

"AN ORDINANCE TO AMEND AN ORDINANCE ENTITLED AN ORDINANCE DEFINING THE SALARIES OF THE OFFICERS OF THE CITY.

"Whereas, the Board of Assessment, Revision and Appeals has been called upon to perform unusual and extra duties in connection with the revision of the assessment for the year 1914; and

"Whereas, in the opinion of the Council it was not intended when the salaries of the said board were fixed that its members should be required to do the great amount of work required in revising the assessment for the year 1914; and

"Whereas, under the third paragraph of Section 31 of the Charter, the Council is given power and authority to fix the salaries of all officers and employes paid by it; and

"Whereas, in the opinion of the Council it would be unfair to permit the said board to do the great amount of work required of them as aforesaid without extra compensation; Now, therefore,

"Be it Ordained by the Council as follows:

"Section 1. That Section 1 of the ordinance entitled 'An ordinance defining the salaries of the officers of the city,' published as altered and amended on page 608 of the Charter, Laws and Ordinances of the City of Wilmington of 1910, be and the same is hereby amended by inserting after the figures '(150.00)' in line 17 of said section the words and figures following, to wit:

"'Provided, however, that there shall be paid in addition to the said sum of one hundred and fifty dollars to each of the members of the Board of Assessment, Revision and Appeals, a further sum of fifteen hundred dollars for the year 1914 only, for extra services rendered, the said fifteen hundred dollars to be divided among the several members of said Board as they may determine, and the said extra compensation shall be due and payable upon the approval of this ordinance.'

"Section 2. That all ordinances or parts of ordinances inconsistent herewith be and the same are hereby repealed."

The ordinance it is alleged is irregular and illegal, contrary to public policy, violates the Constitution of the United States and of the State of Delaware, and also the statutes of the State, and that if the ordinance be approved by the Mayor of the

City it will lead to the withdrawal of $1,500 without warrant of law, unless all of the respondents be restrained from taking further action in the matter. Further, that the interests of the relator and other taxpayers will be affected and their taxes will be increased if the money be paid to the members of the Board, and that the expenditure was not required to meet any public necessity.

The information prays that the ordinance be declared to be invalid, illegal and void, and that all the defendants be perpetually enjoined from taking further proceeding in the matter, and from drawing any check, or order, for the purpose of paying the money, or in any manner receiving, using, disposing of, or paying any check, or order, or from withdrawing in any manner the money referred to in the ordinance. A preliminary injunction and a restraining order to like effect were prayed for.

The information bill was filed on May 15, 1914, and on September 14, 1914, it was amended by inserting the full copy of the ordinance stated above in place of a partial copy thereof. An answer was filed by the Union National Bank, one of the defendants, and on January 9, 1915, a general demurrer to the bill was filed by the other defendants, and was argued by the solicitors for the relator and defendants (except the bank).

By the city charter the President of Council, the Chairman of the Finance Committee and the Building Inspector constitute, *ex officio*, the Board of Assessment, Revision and Appeals. Each of them receives a salary for the separate offices they hold. By the general provision of section 47 of the City Charter it is provided:

"The salaries of the several officers herein provided for shall be fixed from time to time by ordinance, payable monthly, and shall not be less than the following amounts:"

Included under this section are the members of the Board, and by an amendatory Act each of them receive "for their services as members" of that Board $150 per annum. This section further provides that:

"The Council shall not have power to augment or reduce the salary of any officer for and during the period for which he shall have been elected or appointed. * * *

"No officer whose salary is fixed by this Act or by ordinance of said Council shall receive any fees or emoluments in addition thereto * .* *."

And it further empowers Council to allow any city official called by city business outside the city limits his actual traveling expenses and reasonable compensation.

On March 25, 1907 (24 *Del. Laws, c.* 177 §15, *p.* 351), the charter was further amended by giving the Council power to make appropriations to and for the four several departments of the city government and fixing the minimum amounts thereof, and requiring that all revenue coming to any of the departments be turned over to the City Treasurer instead of being retained by the departments. This Act contained this clause:

"Third. The Council shall also have power and authority to fix the salaries of all officers and employes paid by said Council."

By an Act approved April 7, 1913 (27 *Del. Laws, c.* 205, *p.* 525), extra duties were imposed on the Board with respect to the assessment of property, but no provision was made in it for other compensation to the members of the Board for such services, and the Board were authorized to employ agents to assist them in making the assessment.

*Robert Adair,* for the relator.
*Daniel O. Hastings,* City Solicitor, for the defendants other than The Union National Bank.

THE CHANCELLOR (after stating the facts as above). The sole question here raised by the demurrer is whether the Council had authority to pass the ordinance which it purported to adopt on May 15, 1914, respecting the salary, or compensation, to the members of the Board of Assessment, Revision and Appeals. No question was raised as to the jurisdiction of the court, or as to the character of the procedure by an information by the Attorney General in the nature of a bill for an injunction.

Passing by the points made as to constitutional provisions said to have been violated, the validity of the ordinance will be tested by considering the statutes referred to in the preceding statement of facts. As shown by the preamble to it, the ordinance of May 15, 1914, was passed to provide "extra compensation" to members of the Board for their "unusual and extra duties in connection with the revision of the assessment for the year 1914," and it gave to them in addition to their salaries a sum of money "for the year 1914 only." The method of doing this was by entitling the ordinance as one to amend the ordinance defining the salaries of the officers of the city. But obviously the form is immaterial, if the thing to be done be unlawful. The ordinance cannot establish its own validity by giving an inappropriate name to the subject-matter of it. Authority to pass the ordinance is disclosed in a preamble to it to be the Act of 1907. Two questions arise: (1) Did the authority exist before the passage of that Act? (2) Did that Act give the authority?

1. It is clear that prior to the Act of 1907 (24 *Del. Laws*, *c*. 177, §15, *p*. 351), the power of Council to augment the salary of any officer for or during the period for which he shall have been elected or appointed was expressly denied, and every officer whose salary was fixed by the charter was expressly prohibited from receiving any fees, or emoluments in addition to his salary. Both of these provisions unquestionably apply to the members of the Board, and there was no pretense that they were called outside the city limits in performance of the service for which this extra compensation was granted. Therefore, whether this extra sum be called salary, or extra compensation, it was equally within the prohibition of the charter binding on the Council and the members of the Board. If it be considered a salary, it was an attempt to augment the salary of each member of the Board during the term for which he was elected. If it be compensation for extra work, it is a fee, or emolument. The Council is prohibited from making such increase of salary and the officer from receiving the emolument.

It is clear, however, that the money voted to the Board was not a salary. By any reasonably accurate definition a

salary is compensation fixed for official services to be rendered and not extra compensation for extra and unusual services · made after such services had been rendered. These extra and unusual duties were imposed by the law of 1913 not on the members of the Board, but on the Board, and the members of it then had fixed salaries "for their services," meaning all of their services. Therefore, ·it cannot be contended that new duties were imposed on unsalaried officers. They were at liberty to resign their offices if they were unwilling to render .the unusual and new duties, unless paid more than their then salaries for such work. Furthermore, each of the members of the Board to whom the donation was made became members thereof after the passage of the Act of 1913 by which these unusual and extra duties involving a great amount of work were imposed on the Board, and so they had notice thereof when they accepted office. Furthermore, if a salary, it would have been made payable in monthly installments, as required by the charter respecting salaries of all city officers, and not in a lump sum, as the ordinance in question did. Beside all this, the ordinance treats it boldly and unmistakably as extra compensation for extra services in addition to the charter salary, and it was for one year only.

Therefore, unless it be authorized by the Act of 1907, the ordinance was invalid.

2. By the preamble to the ordinance, authority to enact it is claimed under the Act of 1907. The solicitor for the relator objecting to the ordinance urged, with some show of reason, that the above-quoted "third" provision of that Act refers to the officers and employes of the four departments referred to in that Act, which was intended to transfer from these departments to the general treasury the revenues theretofore received by these several departments. It was said that there were certain officers employed by these departments and after that Act they were to be paid by the Council, so that power was given by the quoted section of the Act of 1907 to Council to fix the salaries of these department officers, their salaries having theretofore been fixed by the department employing them. But, however this may be, this Act of 1907 did not

expressly, or by implication, repeal, or limit, or change, the pro- visions of section 47 of the charter prohibiting augmentation of salaries and the receipt of any fee or emolument in addition to the salary fixed by law. This is so obvious that it needs no enlargement of reasoning. In addition to this, by this same Act of 1907, a new power is given to the Council to increase the salaries of the Treasurer's clerk, the Auditor's clerk and the Assistant City Solicitor "at any time." By reasonable inference, then, the prohibition against the increase of salaries of any other officer during his term is retained in full force for if repealed, or changed, by the Act of 1907, then it was not necessary to make the special provision as to the Assistant City Solicitor, the clerk of the Treasurer and of the Auditor. Furthermore, even if the Council could by virtue of the Act of 1907 augment or decrease the salary of an officer during his term, the prohibition against receiving fees and emoluments in addition to the salary remained clearly unaffected and in full force as a legal barrier to a donation to a salaried officer.

Attention was called by the solicitor for the demurring defendants to the fact that soon after the Act of 1907 was passed, ordinances were adopted by the Council fixing salaries of certain officers, and it was urged that this was an interpretation of legislative intent manifested contemporaneously with the new legislation. That fact proves nothing. It does not appear that the ordinance either augmented or decreased salaries during the term for which those officers were elected or appointed, and if they did and were for that reason unlawful, these unlawful acts do not justify other unlawful acts.

The conclusion is inevitable, then, that the Council had no power to pass the ordinance in question. It was an attempt either to increase the salary of officers during their terms of office, or to give them a fee or emolument by voting them compensation for extra services rendered by them in the performance of duties imposed by law in force when they took office. Viewed in either way the Council and the members of the Board were prohibited from doing the thing attempted to be done by the ordinance.

It is, of course, foreign to the question, that the members

of the Board rendered a valuable service and performed great labor in making the assessment of the year 1914, and were entitled not only to commendation therefor, but also to a substantial pecuniary reward. The question is one of law and not of abstract justice, and the ordinance is to be judged by the statutes of the State, which bind the court, as well as the city and its officers.

The demurrer will be overruled; but the overruling of the demurrer does not entitle the complainant to any affirmative relief, because the demurrer admits the well-pleaded allegations of the bill only for the purpose of the argument. The appropriate order upon overruling a demurrer, then, is to require the defendant to plead or answer within a reasonable time to be fixed in the order, and the cause will hereafter proceed as other causes.