JOSIAH O. WOLCOTT, Attorney General of the State of Delaware, at and by the relation of THE TAXPAYERS' LEAGUE, INCORPORATED,

*vs.*

THE MAYOR AND COUNCIL OF WILMINGTON; THE COUNCIL of the said The Mayor and Council of Wilmington; HARRISON W. HOWELL, Mayor of the said City of Wilmington; SAMUEL C. BIDDLE, Auditor of the said City of Wilmington; JAMES F. PRICE, Treasurer of the said City of Wilmington; WILLIAM E. JOHNSON, Building Inspector for the said City of Wilmington; WILLIAM P. WHITE, President of the said Council; JACOB ZIMMERMAN, WILLIAM H. COOK, JOHN L. McGOLDRICK, JAMES KANE, OSCAR C. DRAPER, JOHN O. HOPKINS, WELLER E. STOVER, BURTON S. HEAL, GEORGE E. GRANTLAND, JOHN J. HANEY, JOSEPH L. McDERMOTT and ALBERT N. WILLIAMS, members of the said Council; CLARENCE M. DILLON, Clerk of the said Council; the said WILLIAM P. WHITE, WELLER E. STOVER and WILLIAM E. JOHNSON, constituting the Board of Assessment, Revision and Appeals for the said City of Wilmington; and THE UNION NATIONAL BANK.

*New Castle, July* 16, 1915.

A municipal ordinance is not invalid because, after approval thereof by the mayor, his action has not been reported to the City Council at a

session held after the passage of the ordinance, where the making of such report is according to an established custom merely, and not to a legal or statutory enactment.

, A statute purporting to authorize a City Council to pay extra compensation to a municipal assessment board is invalid, as conferring a gratuity for a private and not for a public purpose, even in the absence of constitutional prohibition.

A municipal Board of Assessment, Revision and Appeals is not legally entitled to extra compensation for extra services rendered; hence a statute purporting to authorize a municipality to pay such compensation cannot be supported as resting on a moral obligation.

While the legislative power over municipal corporations as to what constitutes a public purpose for the appropriation of money is ordinarily uncontrollable by the courts, where the legislature clearly devotes public funds to a private object, the judiciary will declare its action invalid.

A statute purporting to authorize a municipality to pay extra compensation to an assessment board for extra services is unconstitutional, as constituting an appropriation of money to an individual, contrary to the provisions of Const. Article. VIII, §8.

INFORMATION TO RESTRAIN PAYMENT OF MONEY. A demurrer to the original information was overruled (10 *Del. Ch.* 384, 93 *Atl.* 364), and all the defendants, except one of the Board of Assessment, Revision and Appeals, who had died, filed answers. Amendments were filed to the information (*ante p.* 1, 95 *Atl.* 303), alleging in substance that the money voted by the ordinance was withdrawn on May 15, 1914, with knowledge of the filing of the original information and of the application for a restraining order to prevent such withdrawal; that the ordinance had not then become a law because the approval of it by the Mayor had not been reported to Council at another session thereof, and that after the demurrer to the original information had been overruled by the decree of the Chancellor, an Act had been passed by the General Assembly purporting to validate the unlawful ordinance and the illegal withdrawal of the money as extra compensation to the Board of Assessment, Revision and Appeals. The Act approved March 15, 1915, is as follows:

"An Act to authorize the Council of 'The Mayor and Council of Wilmington' to compensate the present Board of Assessment, Revision, and Appeals for extra work done by them.

"Whereas, during the year of 1914 an unusual amount of work has been done by the Board of Assessment, Revision, and Appeals for the City of Wilmington; and

"Whereas, the City Council did pay the members thereof for such extra services the sum of fifteen hundred dollars; and

"Whereas, a question has been raised as to whether under the present laws such extra compensation could be allowed to said Board of Assessment, Revision, and Appeals; and

"Whereas, since the payment of the said sum additional work has been done by said Board of Assessment, Revision, and Appeals for which City Council may desire to compensate the said Board; Now, therefore,

"Be it enacted by the Senate and House of Representatives of the State of Delaware in General Assembly met (two-thirds of the members elected to each house concurring therein):

"Section 1. The act of said City Council in paying the sum of fifteen hundred dollars to the members of the Board of Assessment, Revision, and Appeals, be and the same is hereby ratified and confirmed.

"Section 2. That City Council be and it is hereby authorized and empowered by ordinance to allow such additional compensation to the Board of Assessment, Revision, and Appeals for extra work done or to be done by them as in the judgment of Council may seem proper.

"Section 3. That all acts or parts of acts inconsistent herewith are hereby repealed." 28 *Delaware Laws, Chap*. 122, *p*. 365.

The relator claims that the Act is invalid, contrary to public policy, and in violation of the Constitution of the State of Delaware. Prayers were added asking a preliminary mandatory injunction to compel the defendants to restore to the city the money withdrawn pending the determination of the cause; that the Act be declared invalid; and that further proceedings thereunder be perpetually enjoined and for a preliminary injunction to like effect.

A rule was issued to show cause why a preliminary injunction should not be issued as prayed for, and a restraining order was granted pending the hearing for a preliminary injunction.

Numerous affidavits were filed respecting the knowledge of the defendants as to the pendency of the original information and the restraining order issued thereon. By them it appeared that the ordinance was passed by the council on the evening of May 14, 1914, and soon thereafter was approved by the Mayor. The check for the extra compensation was drawn, signed by several city officials and presented to and paid by the bank to the city clerk before ten o'clock a. m. of the next day, the information having been filed at nine o'clock a. m., the restraining order made about ten o'clock a. m., and served soon thereafter, but after the money had left the bank.

The rule was argued on the information as amended, answers and affidavits. The bank by answer exonerated itself for honoring and paying the check for the money.

*Robert Adair*, for the relator.

*Daniel O. Hastings*, City Solicitor, for the defendants, except the bank.

*Saulsbury, Morris and Rodney*, for The Union National Bank, did not participate in the argument.

The Chancellor. The reasons for holding the ordinance invalid are set out in the opinion respecting the demurrer filed in this cause, 10 *Del. Ch.* 384, 93 *Atl.* 365. They are based entirely on the statutes and ordinances in force when the ordinance was passed, and not on the constitutional provisions, or the Act of 1915.

One question here raised is, whether the ordinance making the allowance for extra compensation was invalid because after the approval thereof by the Mayor his action had not been reported to the City Council at a session thereof held after the passage of the ordinance. This contention of the relator does not seem to be sustained by any rule of law, or procedure, or statute, on the subject, and the established custom of having an official report made to Council which enacted the ordinance of the approval thereof by the Mayor, though it be a wise and orderly procedure, was probably not obligatory or a condition

precedent to the validity of the ordinance, and, therefore, the disregard of the custom did not render the ordinance invalid.

One of the prayers was for a preliminary mandatory injunction to require the members of the board to refund to the city treasury the money received by them for extra compensation, so that the *status quo* the filing of the information should be maintained. But in view of the conclusion reached as to the main question raised, it will probably not be necessary to grant this prayer.

Counsel for the relator urges three grounds to show the invalidity of the statute of 1915: (1) It is contrary to *Section 8 of Article VIII of the Constitution of Delaware;* (2) it is retroactive; and (3) it is an unwarranted interference by one branch of the government, the Legislature, with another branch thereof, the judiciary.

The Constitution of Delaware has the following provision, being *Section 8 of Article VIII*:

"No county, city, town, or other municipality shall lend its credit or appropriate money to, or assume the debt of, or become a shareholder or joint owner in or with any private corporation or any person or company whatever."

It is obvious also that the city officers were not entitled to be paid extra compensation for the performance by them of the official duties prescribed by law for them.

"Where an officer performs duties imposed by law he is entitled to the compensation therefor fixed by law and no other. He is not entitled to extra compensation for services performed in the line of his official duty. The fact that the salary or compensation may be recognized as inadequate remuneration for the services exacted and actually performed does not change the rule. And the principle is the same although his duties are greatly increased. Courts everywhere recognize the necessity of protecting the public funds, and hence usually enforce the rule against permitting extra compensation either directly or indirectly, with appropriate strictness. * * *

"Work outside of office hours ordinarily will not justify extra pay where the salary is definitely prescribed by law; * * *

"Knowledge on the part of the municipal authorities of the performance of extra service will not bind the local corporation to give additional

pay. * * * Nor will a promise to pay the officer extra compensation avail to bind the municipal corporation. * * *" 2 *McQuillin on Municipal Corporations*, §525, p. 1140.

Elsewhere McQuillin calls such payments "quasi extortion." See, also, 1 *Dillon on Municipal Corporations* (5th Ed.) §426.

There is no moral claim of the members of the board for extra compensation. It was the duty of the members of the board to perform all the extra duties imposed on them as such officials by the Act of 1915, and they were not legally entitled to be paid extra compensation for the extra services. How, then, could a moral obligation to pay for the extra services arise? There is no moral obligation to pay a public officer for an official service which he is legally bound to perform under his oath of office, and by the law regulating his duties in force when he assumed his office. That the duties are onerous, exacting and disproportionate to the pay fixed by law for the service when he took the office does not create an obligation of any kind, legal or moral, to pay him more. Therefore the payment of any greater salary than that fixed by law is a gratuity and a gift. Being clearly a gratuity it was not given for a public purpose, and the Legislature cannot make it such, and if it is clearly an unauthorized purpose the court should declare it invalid, even in the absence of a constitutional prohibition. 37 *Cyc.* 719.

The legislative power over municipal corporations is large and ordinarily its determination of what is a public purpose for taxation, or the appropriation of money, is uncontrollable by the courts. But where the Legislature clearly devotes public funds to an object in no sense public, the judiciary may, and should, declare its action invalid. This is well expressed by Judge Severens in *N. Y. Life Ins. Co. v. Board, etc.*, 106 *Fed.* 123, 133, cited by the defendants:

"The power to determine the fitness of measures to promote the interests or discharge the duties of the public, and of each political division thereof, is inherent in the sovereignty of every state having an organized government. Necessarily coincident with this power is the power to raise

money by taxation levied upon the whole body politic, or some subordinate organization thereof, as may be deemed just and proper, for the purpose of accomplishing the intended object. These propositions are fundamental in our republican forms of government, in common with other forms of civil organization existing for the purpose of executing the powers and duties of a state, and are familiar to every one. By the constitution of Ohio these powers of the state are expressly devolved upon the legislature. It cannot discharge this trust without authority to determine, as the representative of the state, for what public objects and upon what political divisions taxes should be levied. The constitution may impose restrictions; but, unless it has done so, the power of the legislature is untrammeled, and the judicial department has no authority to interfere. It may be conceded that if the legislature, departing from its functions, should, under the guise of legislation, devote public funds to be collected by taxation for an object in no sense public, the judiciary has authority to interfere and declare such action to be outside of the legislative power, and therefore void, as amounting to a confiscation. But the rule in such cases is that the violation of the restrictions must be clear and indubitable before such interference is authorized."

As Mr. Cooley says:

"It is implied in all definitions of taxation that taxes can be levied for public purposes only." *Cooley on Taxation* (*2nd Ed.*) 103-105.

Dillon thus states the rule:

"It may be regarded as a settled doctrine of American law that no tax can be authorized by the legislature for any purpose which is essentially private, or to state the proposition in other words, for any but a public purpose." 1 *Dillon on Municipal Corporations* (*4th Ed.*) §508.

And the right of the municipal corporation to appropriate money is no greater than its right to tax. 1 *Cooley on Constitutional Limitations*, 184.

"The decision of the question whether a tax or a public debt is for a public or private purpose is not a legislative, but a judicial function. A legislature cannot make a private purpose a public purpose, or draw to itself or create the power to authorize a tax or a debt for such a purpose, by its mere fiat." Quoted in *Woodall v. Darst*, (1912) 71 *W. Va.* 350, 77 *S. E.* 264, 44 *L. R. A.* (*N. S.*) 83, *Ann. Cas.* 1914B, 1278, citing several cases.

Is the enabling Act, as well as the ordinance, a violation of the constitutional provision, as an appropriation of money to an individual? There has been no reported judicial interpretation in this State of this provision, except the case of *State v. Levy Court*, 1 *Pennewill* 597, 43 *Atl.* 522. In that case the Superior Court held that the payment by legislative authority to a reform school of money for the maintenance of boys committed to the school by the courts was not an appropriation of money within the meaning of the Constitution, but was public and impersonal and a payment of a just obligation and not a payment to the school in any private sense for private purposes. Of course, this decision could not justify a payment of money to a public officer as extra and additional compensation for the performance of his official duties for which a salary was provided by law. In fact it inferentially holds that a payment of money for what was not a just obligation and for the private use of the payee would be an appropriation of money within the Constitution.

Other illustrations of what would not be an appropriation of public money to individuals are the contributions to pension funds to care for public servants as a means to secure faithful and efficient service. *Commonwealth v. Walton*, 182 *Pa. St.* 373, 38 *Atl.* 790, 61 *Am. St. Rep.* 712; *Trustees of Firemen's Fund v. Roome*, 93 *N. Y.* 313, 45 *Am. Rep.* 217. But even this is not uniformly conceded, and in other states than Pennsylvania and New York are held to be gratuities. 1 *Dillon on Municipal Corporations*, §430, and note.

Probably the primary object of the constitutional provision was to prevent an alliance between public and private interests. *Wheeler v. Philadelphia*, 77 *Pa. St.* 338, 355. But it has certainly a wider application and is broad enough to prohibit the legislature, or the municipality, from authorizing a gift of money to an official for the performance of his official duties. No authority to the contrary was submitted. It is, however, immaterial whether the Act was within the prohibition of the Constitution, or not, for as has been shown it was invalid even in the absence of a constitutional limitation. It is no answer to say, as the solicitor for the defendants con-

tended, that if the Act of 1913 increasing the duties of the Board of Assessment, Revision and Appeals had increased the salary of the members of the board it would have been a valid enactment, and, therefore, the legislature could by the enabling Act of 1915 validate an illegal payment of extra compensation for their services.

It is strenuously urged, however, that there was here a moral obligation to pay the extra compensation, and therefore the enabling Act was valid. There are cases where the city or state may recognize a moral, or equitable, obligation as distinct from a legal duty. Honesty and fairness is a duty of governmental bodies, as well as of individuals. Several cases were cited to support the general proposition. In *Woodall v. Darst*, 71 *W. Va.* 264, 77 *S. E.* 264, 80 *S. E.* 367, 44 *L. R. A.* (*N. S.*) 83, *Ann. Cas.* 1914*B*, 1278, an Act to pay a militiaman for injuries in the service was upheld because by a prior statute the State had offered to compensate those so injured as an inducement. In the case of *Matter of Borup*, 182 *N. Y.* 222, 74 *N. E.* 838, 108 *Am. St. Rep.* 796, a statute authorizing payments for injuries to property by grading by a town pursuant to a statute which authorized the grading, but provided no way to assess or pay the damages, was held to be valid. This case was approved in *People v. Prendergast*, 202 *N. Y.* 188, 95 *N. E.* 715. So in New Jersey the court sustained an Act to pay to a college for the tuition of students appointed under a prior Act providing for free scholarships, but which made no appropriation therefor. *Rutgers College v. Morgan*, 70 *N. J. Law* 460, 57 *Atl.* 250.

In *United States v. Realty Co.*, 163 *U. S.* 427, Congress had passed an Act authorizing payment of a bounty to producers of sugar, and relying on it many had started in the business. Afterwards Congress repealed the Act. Later an Act was passed to indemnify those who, relying on the bounty Act, had suffered losses by incurring expenses based on it. This last Act was sustained as a recognition of a moral obligation independent of a legal obligation. But it has been criticized as an unwarranted application of a correct principle, and even if sound does not apply here.

The case of *Lowell v. Oliver*, 8 *Allen* (*Mass.*) 247, was one where an Act to reimburse citizens who had advanced money for bounties to soldiers in the Civil War as inducements to enlistments for public defense. This case was approved in *Mead v. Acton*, 139 *Mass.* 341, 344, 1 *N. E.* 413, where the court declared unconstitutional an Act to allow a town to pay bounties to soldiers who had re-enlisted, because it was not a public object, and the court drew the distinction between cases where bounties had been advanced as an inducement to public service and cases where there had been no promise or inducement made to enlist. The payments were regarded by the court as gratuities.

"The principle would be the same if a town should vote a gratuity or a pension to one who had rendered services as an officer or was in any way entitled to its gratitude."

In *Bailey v. Philadelphia*, 167 *Pa. St.* 569, 31 *Atl.* 925, 46 *Am. St. Rep.* 691, there was a difference of opinion as to which of two bodies was by law authorized to appoint a principal of a school, and after the one appointed had rendered services the appointment was declared to be invalid. Payment for the services of the principal was held to be valid. This was correct, as also was the decision in *Commonwealth v. Oellers*, 140 *Pa. St.* 457, 21 *Atl.* 1085, cited in the above case. But there is no relation to the case before the court.

One could easily agree with the conclusions of the court in the cases of *Mayor v. Tenth National Bank*, 111 *N. Y.* 446, 18 *N. E.* 618; *Guthrie National Bank v. Guthrie*, 173 *U. S.* 528; and *N. Y. Life Insurance Co. v. Board of Commissioners*, 106 *Fed.* 123, without agreeing with the contention of the defendants.

In the case of *Mayor v. Tenth National Bank*, 111 *N. Y.* 446, 18 *N. E.* 618, the court regarded the advances made for the city as constituting a debt which had some meritorious basis to rest on. Even the cases of *Brewster v. Syracuse*, 19 *N. Y.* 116, and *Friend v. Gilbert*, 108 *Mass.* 408, do not sustain the position of the defendants. The New York case followed the broad dicta in *Guilford v. Supervisors*, 13 *N. Y.* 143, but

these dicta have been repudiated in later decisions in New York. See 1 *Dillon on Municipal Corporations* (*5th Ed.*) §126.

There are cases in California which hold a stricter rule and deny the power to make appropriations of public money where there is no legal right to recover it by law. *Conlin v. Board of Supervisors*, 99 *Cal.* 17, 33 *Pac.* 753, 21 *L. R. A.* 474, 37 *Am. St. Rep.* 17; *Id.*, 114 *Cal.* 404, 46 *Pac.* 279, 33 *L. R. A.* 752.

And in Mississippi, if a claim against the city or state be barred by a statute of limitations, a payment of it is a gratuity or gift. *Trowbridge v. Schmidt*, 82 *Miss.* 475, 34 *South.* 84.

Indeed, the solicitor for the defendants very frankly says he has found no case that directly supports his claim that this appropriation is a public purpose, or constitutes a moral obligation to pay. It was a gratuity pure and simple. It was extra compensation for official services rendered as required by a law in effect when the officials took office, there being a salary attached to the office. As the court said in *Mead v. Acton*, cited herein, this is like a pension to a faithful officer of the town. There was no obligation to pay an officer extra· compensation for the rendition of services which by law he is required to perform.

None of the cases sustain the contention of the solicitor for the Board of Assessment, Revision and Appeals, but all of them by inference deny the validity of the ordinance if it be, as it is, a gratuity. All the research of able counsel has failed to show a case at all like the case at bar, and, of course, he could not do so.

Is the Act invalid because it is retroactive? Inasmuch as the purpose of both the city ordinance and the subsequent statute was not a public purpose, and there was no legal, moral, or equitable obligation to pay the extra compensation in question here, it is unnecessary to decide whether the Act is also invalid because retroactive. But the matter seems settled by the case of *N. Y. Life Insurance Co. v. Board of Commissioners*, 106 *Fed.* 123, which holds such an enabling Act not to be invalid because retroactive. The court in the case of *State v. Froehlich*, 118 *Wis.* 129, 94 *N. W.* 50, 61 *L. R. A.* 345, 99 *Am. St. Rep.* 985, took a different view.

It is also unnecessary to decide whether there has been an unwarranted interference by the legislative branch with the judicial branch, or if this be true, whether it affects the validity of the Act, for, for other reasons, it has been decided that the Act was beyond the power of the Legislature.

On the main questions raised, then, the conclusions are that independent of statutory prohibition the city had no power or right to give extra compensation to a public officer for the performance of his official duties fixed at the time he assumed office and for which there was a salary provided; that such payment being a gratuity could not be validated by the Legislature, even if it be not prohibited from doing so by the Constitution; that there was no moral or equitable obligation to pay the extra compensation, and so no legislative power to authorize it; that being a gratuity and a payment not for a public, but for a private purpose, the payment of extra compensation was an appropriation of money by a city to an individual within the meaning of the constitution; and that the enabling Act was not necessarily invalid because retroactive in its purpose and effect.

What has been here stated is clearly applicable to the first section of the Act of 1915, which sought to validate the payment of $1,500 theretofore made to the members of the Board of Assessment, Revision and Appeals under the ordinance as extra compensation; and also applies to section 2 of the Act in so far as it attempts to authorize the allowance of any other payment for extra work done before the passage of the Act.

By section 2 of the Act the Legislature attempts to authorize the City Council to allow such additional compensation to the Board of Assessment, Revision and Appeals for extra work "to be done" by the Board as in the judgment of the Council may seem proper. If this refers to extra work done after the passage of the Act, then, under the general legislative power over municipal corporations, the Act may be valid as authorizing the city to increase the compensation of officers during their terms of office. But there still remains the question whether such an ordinance would not be an appropriation of money to an individual within the meaning of the provisions

of the Constitution of Delaware, hereinabove considered, and rightly regarded as a gratuity, being a reward for performing during the whole term of office all the duties thereof for the salary fixed by law therefor. As to this no opinion is expressed, because there is no ordinance to accomplish that purpose pending, and for a like reason, and because this was not discussed by counsel, the present relief will not include an injunction against the taking of any and all further action under the Act of 1915, but will limit it to action to award extra compensation for any work done before the passage of the Act. Possibly the meaning of the language of section 2 is limited by the last preamble to the Act, and the words "to be done" relate to work done since the prior payment and before the passage of the Act, and if it does, then the whole of section 2 is invalid for reasons here stated. As to this, however, no opinion is expressed.

The legal questions here raised are of importance to every taxpayer and good citizen. It is a duty of the courts to hold within their proper bounds all governmental agencies when they seek to overstep them even in good faith, and it is equally a duty of good citizenship to take legal steps to prevent illegal uses of public money, however worthy the object to be accomplished. Because of the importance of the questions of law involved, and because the essential facts are undisputed, a fuller expression of judicial conclusions, and the reasons therefor, have been given here than is usually necessary on a preliminary application.

A preliminary injunction will be awarded enjoining, until the further order of the Chancellor, the City Council from making any extra compensation to the members of the Board of Assessment, Revision and Appeals for any services performed before the passage of the Act of 1915, but the preliminary mandatory injunction to require a return of the sum of money already received by the Board will be refused.